Vito MATARESE, Petitioner-Appellant,

v.

Eugene LeFEVRE, Superintendent, Clinton Correctional Facility, and Robert Abrams, Attorney General, State of New York, Respondents-Appellees.

No. 736, Docket 83–2389.

United States Court of Appeals, Second Circuit.

Argued Jan. 30, 1986.

Final Briefs Submitted Feb. 6, 1986.

Decided Sept. 12, 1986.

Michael Young, New York City, for petitioner-appellant.

Robin Bernstein, Asst. Dist. Atty., Brooklyn, (Elizabeth Holtzman, Dist. Atty., Kings County, Barbara D. Underwood, Asst. Dist. Atty., Brooklyn, on the brief), for respondents-appellees.

Before VAN GRAAFEILAND, NEWMAN and KEARSE, Circuit Judges.

KEARSE, Circuit Judge:

Petitioner Vito Matarese, a New York State prisoner convicted of third-degree robbery, appeals from a final judgment of the United States District Court for the Eastern District of New York, Edward R. Neaher, *Judge*, dismissing his petition for a writ of habeas corpus which contended, *inter alia*, that the trial judge's main and supplemental jury charge that "a person is presumed to intend the natural consequences of his act, unless the act was done under circumstances or conditions which preclude the existence of such intent," unconstitutionally shifted to Matarese the burden of proof on the issue of intent. *See Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). Matarese also appeals from an order of the district court dismissing his motion pursuant to Fed.R.Civ.P. 60(b)(6) for relief from the judgment. Respondents Eugene LeFevre, *et al.* (the "State"), contend that the appeal should be dismissed for lack of appellate jurisdiction and that in any event the appeal lacks merit.

We conclude that we lack jurisdiction to review the judgment dismissing the petition, that we have jurisdiction to review the order denying Matarese's Rule 60(b)(6) motion for relief from the judgment, and that the order denying Rule 60(b)(6) relief should be affirmed.

## I. BACKGROUND

In June 1978, after a jury trial on charges of, *inter alia*, first-degree robbery and petit larceny, Matarese was convicted in New York State Supreme Court, Kings County, of third-degree robbery and was sentenced to a prison term of fifteen years to life. Matarese's principal defense was that he had not had larcenous intent.

### A. *The Evidence and the Trial Arguments*

At the trial, the State presented evidence that, on the afternoon of October 12, 1976, after consuming five rum-and-coke drinks in a period of fifteen or twenty minutes in a bar in Brooklyn, New York, Matarese became involved in an argument with one of the other patrons, Clifford Ely, who either fell or was knocked to the floor by Matarese. When Louis Schobel, a friend of Ely, approached, Matarese ordered him to go into the bathroom. When Schobel tried to hit Matarese, Matarese lifted his coat, exposing what appeared to be a gun, and ordered Schobel, another patron, and the bartender into the bathroom. Ely remained on the floor. As the others were walking towards the bathroom, an off-duty police officer entered the bar. Matarese grabbed his arm and told him to go into the bathroom. A third patron was already in the bathroom. Matarese told them all not to come out or they would be shot. He

then took $140 from the bar's cash register and left.

In defense, Matarese's attorney argued that, for two reasons, the evidence was insufficient to establish that Matarese had had the intent to commit a robbery. First, emphasizing that Matarese had never announced a robbery or attempted to take anything from any of the individuals in the bar, counsel suggested that Matarese had ordered the patrons and the bartender into the bathroom to protect himself after Schobel had threatened to hit him, and that Matarese had taken the money merely as an afterthought. Second, counsel argued that Matarese had not been sober enough to be capable of forming the requisite intent to commit a robbery. He stressed that Matarese had consumed five rum-and-cokes in a period of fifteen minutes, had argued with another patron, and on his way out, had stumbled, dropped a bottle of scotch and some coins, and been unable to pick them up.

### B. *The Trial Court's Instructions*

Prior to the jury's deliberations, the trial court instructed the jury on first-degree robbery, third-degree robbery as a lesser included offense of first-degree robbery, and petit larceny. Under New York law, all of these offenses required proof of larcenous intent. The court informed the jury that "a person steals property and commits larceny when with the intent to deprive another of property he wrongfully takes such property from an owner thereof," and that "a person acts with intent to deprive another of property when his conscious aim or objective is to deprive another of property." The court further instructed the jury as follows on the element of intent:

I charge you that intent is an essential element in every crime. Intent is the operation of the mind whereby a person aims to obtain the desired natural consequences or effects of his act. It is a mental operation that cannot be photographed. It is silent, secret and invisible to the human eye. The intent of a person may, however, be ascertained from

his conduct, his speech or from a combination of both. Generally a man's acts and outward manifestations reveal an expression of his mind. It is not always by words alone that a man expresses his intention and I am sure that you have heard the old adage that actions speak louder than words.

*It is a fundamental rule in evidence that a person is presumed to intend the natural consequences of his act, unless the act was done under circumstances or conditions which preclude the existence of such intent.* If you find that the defendant committed the act charged, then you must decide whether or not from all of the established facts, speech, conduct and actions of the defendant, he intended the crime.

Under the Penal Law, intent is defined as follows: "A person acts intentionally with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct."

As I have just advised you, in order to find the defendant guilty of the crimes charged in the indictment, the People must prove his guilt beyond a reasonable doubt as to each essential element of the crime and one of the essential elements is intent.

There has been testimony at the time of the crimes charged to him and alleged that the defendant committed, he had had several drinks. If you are satisfied from the evidence that he did in fact commit the crimes charged, then you must consider whether or not he was in such a mental state that he could not form an intent to commit the acts. Was he in fact intoxicated? If he was not, then you need not consider this at all. If he was, then I charge you that intoxication is not in and of itself a defense to a criminal charge but evidence of intoxication, if you believe it and accept it, must be considered by you for the purpose of determining whether or not the defendant was in such a mental state at the time immediately prior to and at the

time of the acts being committed so that he could not form the intent required by law. The question is not whether the defendant was drunk or intoxicated but whether his condition was of such a character that it destroyed the power to form a particular intent, which is a necessary element of the crimes charged.

The jury should proceed with caution before arriving at the conclusion that the voluntary intoxication, if the jury believed that he was intoxicated, of the defendant in any way affected his ability to form an intent. In considering this proposition, you should consider the details surrounding the alleged crime, including the details which preceded it and the subsequent acts of the defendant thereafter. It is for you to determine on the basis of the entire testimony whether or not you believe the defendant was intoxicated or in the mental state affecting his ability to form the requisite intent. Then apply the law as I have defined it to you.

(Emphasis added.) The italicized language forms the basis for Matarese's claim that the court improperly shifted to him the burden of proof on the issue of intent.

The judge also instructed the jury as to the nature of the prosecution's burden of proof. He stated that the prosecution always had the burden of proof, that its burden was to prove Matarese's guilt beyond a reasonable doubt, and that the prosecution bore this burden with respect to each essential element of the crime, including the element of intent. The judge stated that the defendant was "clothed ... with a presumption of innocence ... [and] entitled to every inference in his favor which can be reasonably drawn from the evidence." It reminded the jury that the jury was the trier of facts.

Following the charge, defense counsel questioned whether there had been a "specific charge in regard to the necessity to find intent to each and every one of those elements," but did not otherwise object to the intent portion of the court's instructions.

The jury began its deliberations on February 22, 1978, at 10:40 a.m. That afternoon, it requested and received a rereading of, *inter alia*, the judge's instructions on the elements of the crimes charged. The jury resumed its deliberations at 2:29 p.m. At 4:40 p.m., it returned to the courtroom with a request that the elements of first-degree robbery be explained again and stated, "We would like to have an understanding if the weapon has to be displayed with the intent to rob." After reinstructing the jury on the elements of first-degree robbery, the trial judge continued:

As I told you earlier, intent is an essential element of every crime.

I'll read it to you what I said about intent earlier and redefine it for you. Apparently it's giving you some difficulty.

Intent is the operation of the mind whereby a person aims to obtain the desired natural consequence or effect of his act. It is a mental operation that cannot be photographed. It is silent and secret and it's invisible to the human eye. The intent of a person may, however, be ascertained from his conduct, his speech or from a combination of both. Generally a man's actions and outward manifestations reveal an expression of his mind. It is not always by word alone that a man expresses his intention and the old adage says that actions speak louder than words.

It is a fundamental rule in evidence that a person is presumed to intend the natural consequences of his act unless the act was done under circumstances or conditions which preclude the existence of such intent.

If you find that the defendant committed the acts charged, then you must decide whether or not from all of the established facts, speech and conduct and actions of the defendant, he intended to commit the crimes charged.

Under the Penal Law the word intentional is defined as follows: "A person acts intentionally with respect to a result or to conduct described by a statute de-

fining an offense when his conscious objective is to cause such result or to engage in such conduct."

Have I answered your question?

THE FOREMAN: Yes.

THE COURT: ... Are you close to a verdict?

THE FOREMAN: I don't know.

THE COURT: All right. Go ahead.

The jury resumed deliberations at 4:45 p.m. Approximately 1½ hours later, the jury adjourned for the night. When it resumed the next morning, it returned its verdict after less than a half hour's further deliberation. The jury found Matarese guilty of robbery in the third degree. It was not asked for a verdict on the petit larceny charge.

C. *Post-Conviction Proceedings in State Court*

On his direct appeal to the Appellate Division of the Supreme Court, Matarese argued, *inter alia,* that the trial court's charge on the presumption of intent violated his constitutional right to due process of law, citing *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450. The State did not argue that Matarese's failure to make a contemporaneous objection to the instruction constituted a procedural default warranting affirmance, but rather conceded that under then-current law, *see People v. Thomas,* 71 A.D.2d 280, 422 N.Y.S.2d 394 (1st Dept.1979), *rev'd,* 50 N.Y.2d 467, 429 N.Y.S.2d 584, 407 N.E.2d 430 (1980), such a failure did not bar review of Matarese's claim. The State argued only the merits, contending that the charge did not violate due process. The Appellate Division affirmed the conviction without opinion, 74 A.D.2d 740, 424 N.Y.S.2d 968 (2d Dept. 1980), and leave to appeal to the New York Court of Appeals was denied, 50 N.Y.2d 846, 430 N.Y.S.2d 1032, 407 N.E.2d 1360 (1980).

D. *The Present Habeas Proceeding*

In August 1980, Matarese commenced the present habeas proceeding *pro se* in the district court, principally pursuing his *Sandstrom* contention that the trial court's charge as to the presumption of intent violated his right to due process. In a Memorandum and Order dated April 23, 1981, the district court rejected Matarese's contention, ruling that, in light of the charge as a whole, the jury could not reasonably have interpreted the trial court's instructions as creating a mandatory presumption or as shifting to the defense the burden of persuasion on the issue of intent. Thus, the court concluded that if there was any *Sandstrom* error in the charge, it was harmless. Judgment was promptly entered dismissing the petition ("1981 Judgment").

On December 7, 1983, Matarese filed in the district court a notice of appeal from the 1981 Judgment, a motion pursuant to Fed.R.Civ.P. 60(b)(6) requesting relief from the 1981 Judgment, a request for a certificate of probable cause, and a motion for leave to proceed *in forma pauperis.*

In a Memorandum Order dated December 16, 1983 ("1983 Order"), and filed on December 21, 1983, the court denied the Rule 60(b) motion and the request for a certificate of probable cause. In denying Rule 60(b) relief, although the court stated that it saw "no reason to *consider* the Rule 60(b)(6) claim," (1983 Order at 1; emphasis added), it apparently rejected the motion on its merits, stating that its 1981 denial of Matarese's petition was

buttressed by the subsequent decisions in *Guichard v. Smith,* 517 F.Supp. 942, 948 (E.D.N.Y.1981), *aff'd,* 681 F.2d 801 (2d Cir.1981), *cert. denied* [459 U.S. 841], 103 S.Ct. 92, [74 L.Ed.2d 85] (1982); *Nelson v. Scully,* 672 F.2d 266, 272 (2d Cir. 1982), *cert. denied,* 456 U.S. 1008 [102 S.Ct. 2301, 73 L.Ed.2d 1304] (1982); *Rivera v. Coombe,* 683 F.2d 697, 700 (2d Cir.1982), *cert. denied* [459 U.S. 1162], 103 S.Ct. 805 [74 L.Ed.2d 1007] (1983); *Brayboy v. Scully,* 695 F.2d 62, 66 (2d Cir.1982), *cert. denied* [460 U.S. 1055], 103 S.Ct. 1505 [75 L.Ed.2d 934] (1983); *Rock v. Coombe,* 694 F.2d 908, 915–16 (2d Cir.1982), *cert. denied* [460 U.S. 1083], 103 S.Ct. 1773 [76 L.Ed.2d 345]

(1983); and *see also Connecticut v. Johnson* [460 U.S. 73], 103 S.Ct. 969, 977–78 [74 L.Ed.2d 823] (1983) (plurality opinion) (standard for harmless error in reviewing *Sandstrom* claims).

1983 Order at 1–2.

Meanwhile, this Court, having been notified by the district court of the notice of appeal that Matarese had filed with his Rule 60(b) motion, docketed an appeal in the case. On December 19, 1983, unaware of the district court's as yet unfiled order denying appellant's motion for a certificate of probable cause, we entered an order dismissing the appeal without prejudice to reinstatement within 30 days from the entry of an order by the district judge granting or denying a certificate of probable cause. On January 10, 1984, after this Court had received a copy of the district court's order denying both the Rule 60(b) motion and the motion for a certificate of probable cause, the appeal was reinstated.

Matarese promptly applied to this Court for a certificate of probable cause and for permission to proceed *in forma pauperis.* Both motions were granted on September 11, 1985, and on October 18, 1985, Matarese was assigned counsel.

## II. APPELLATE JURISDICTION

At oral argument of this appeal, we raised, *sua sponte, see Louisville & N.R.R. Co. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908), the question of our jurisdiction to hear the present appeal. Our question was prompted by the fact that Matarese's notice of appeal was not filed until more than 32 months after entry of the 1981 Judgment and was filed prior to the denial of his Rule 60(b) motion. The parties submitted supplemental briefs on the question, and we are satisfied, for the reasons below, that we have jurisdiction to review the district court's denial of the Rule 60(b) motion, although not to review the 1981 Judgment.

### A. *The 1981 Judgment*

■ We think it clear that we do not have jurisdiction to review the 1981 Judg-

ment itself. That judgment was entered in April 1981, and no notice of appeal, nor any other document purporting to relate to appellate review, was filed until 1983. Under Rule 4(a)(1) of the Federal Rules of Appellate Procedure the notice of appeal in a civil case not involving the United States or one of its officers or agencies, must be filed within 30 days after the date of entry of the order or judgment appealed from. The time limit for filing a notice of appeal is " 'mandatory and jurisdictional.' " *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 61, 103 S.Ct. 400, 403, 74 L.Ed.2d 225 (1982) (quoting *Browder v. Director, Department of Corrections of Illinois,* 434 U.S. 257, 264, 98 S.Ct. 556, 561, 54 L.Ed.2d 521 (1978)); *see In re Cosmopolitan Aviation Corp.,* 763 F.2d 507, 514 (2d Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 593, 88 L.Ed.2d 573 (1985); *Stirling v. Chemical Bank,* 511 F.2d 1030, 1031 (2d Cir.1975); *cf. United States v. Robinson,* 361 U.S. 220, 224, 80 S.Ct. 282, 285, 4 L.Ed.2d 259 (1960) (construing 10–day limitation imposed by Fed.R.Crim.P. 45(b)).

■ Matarese urges that we should deem his notice of appeal to have been timely filed with respect to the 1981 Judgment as a matter of equity, on the ground that, prior to noticing the jurisdictional flaw, we held Matarese's notice of appeal and motions for some 20 months and then granted him a certificate of probable cause, assigned him counsel, and accepted his briefs and appendix on this appeal. He argues that had we dismissed his appeal promptly, he could equally promptly have pursued other avenues of relief in the district court. Even were we persuaded that our failure to notice *sua sponte* the jurisdictional flaw at an earlier time somehow excused Matarese's nearly three-year tardiness in filing his notice of appeal, we would have no authority to take jurisdiction as Matarese suggests. The power of the federal courts to extend the time limits on the invocation of appellate jurisdiction is severely circumscribed. The district court may extend the 30–day appeal period for up to thirty days for good cause shown.

Fed.R.App.P. 4(a)(5), but may not extend it further, *Moore v. Nelson,* 611 F.2d 434, 436 n. 4 (2d Cir.1979); *In re Orbitec Corp.,* 520 F.2d 358, 361 (2d Cir.1975). This Court has no power whatever to extend the deadline for filing the notice of appeal. Fed.R. App.P. 26(b); *see United States v. Myers,* 692 F.2d 861, 863 (2d Cir.1982).

As we have previously noted, this combination of restrictions

has the consequence that no appeal can be taken unless something is done within 30 days after expiration of the period prescribed by the first paragraph [of Rule 4(a) ] no matter how excusable the neglect ..., but the language is clear and the policy in favor of a short and definite limitation on the taking of appeals is very strong.

*In re Orbitec Corp.,* 520 F.2d at 361. We thus have no jurisdiction to hear an appeal from the district court's 1981 Judgment dismissing Matarese's habeas petition.

B.  *The 1983 Order*

▮  An order denying a Rule 60(b) motion is a final order, appealable under 28 U.S.C. § 1291 (1982), *Cinerama, Inc. v. Sweet Music, S.A.,* 482 F.2d 66, 71–72 (2d Cir.1973); *Wagner v. United States,* 316 F.2d 871, 872 (2d Cir.1983) (per curiam); 7 *Moore's Federal Practice,* ¶ 60.30[3], at 60–343 (1985), and Matarese urges us, alternatively, to treat his notice of appeal as seeking review of the district court's 1983 Order denying his Rule 60(b) motion for relief from the 1981 Judgment. Though the notice of appeal in this connection is doubly flawed, in that it was filed before the district court denied the Rule 60(b) motion and, perforce, does not mention that denial, we conclude that we may properly review the 1983 Order.

▮  While Fed.R.App.P. 3(c) requires that an appellant specify in his notice of appeal the order or decision of which review is sought, the failure to do so is not a jurisdictional defect:

The requirement of Fed.R.App.P. 3(c) that the notice of appeal "shall designate the judgment, order or part thereof ap-

pealed from" serves as "a means of identification, and not as a step in appellate pleading." *Bancroft Navigation Co. v. Chadade Steamship Co.,* 349 F.2d 527, 528 (2d Cir.1965) (construing Fed.R. Civ.P. 73(b), the predecessor of Fed.R. App.P. 3(c)); *see also Franks v. United States Lines Co.,* 324 F.2d 126, 127 n. 1 (2d Cir.1963). Thus, "a mistake in designating the judgment appealed from is not invariably fatal as long as the intent to appeal from a specific judgment can be fairly inferred." *Daily Mirror, Inc. v. New York News, Inc.,* 533 F.2d 53, 56 (2d Cir.), *cert. denied,* 429 U.S. 862, 97 S.Ct. 166, 50 L.Ed.2d 140 (1976).

*Mallis v. Bankers Trust Co.,* 717 F.2d 683, 693 (2d Cir.1983). Nor does the premature filing of an appeal deny the appellate court jurisdiction to review the district court's decision when it is eventually filed. The notice "will be treated as though it were timely, absent prejudice to appellee." *In re Martin-Trigona,* 763 F.2d 135, 138 (2d Cir.1985); *see Lemke v. United States,* 346 U.S. 325, 326, 74 S.Ct. 1, 98 L.Ed. 3 (1953); *Pireno v. New York State Chiropractic Association,* 650 F.2d 387, 389 n. 4 (2d Cir.1981), *aff'd sub nom. Union Labor Life Insurance Co. v. Pireno,* 458 U.S. 119, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982); *Leonhard v. United States,* 633 F.2d 599, 611 (2d Cir.1980), *cert. denied,* 451 U.S. 908, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981); *Yaretsky v. Blum,* 592 F.2d 65, 66 (2d Cir. 1979).

▮  We cannot conclude that the failure of Matarese to file a second notice of appeal, designating the Rule 60(b) order as a decision appealed, misled or prejudiced the State. Apparently unaware of any jurisdictional defect whatever in the present appeal until after this Court raised the matter *sua sponte* at oral argument, the State fully briefed the merits of the *Sandstrom* claim made by Matarese. Since the substance of Matarese's *Sandstrom* arguments is much the same with respect to both the 1981 Judgment and the 1983 Order, and since, as discussed in Part III below, the scope of our review of the 1983

Order is more limited than would have been the scope of our review of the 1981 Judgment, we think the State will not be prejudiced by our treating the notice of appeal as challenging the 1983 Order.

In the absence of prejudice to the State, we conclude that Matarese's challenge to the 1983 Order should not be dismissed either because his notice of appeal was premature, or because it failed to mention the imminent but not-yet rendered denial of his Rule 60(b) motion.

## III. THE MERITS OF THE CHALLENGE TO THE 1983 ORDER

■ Rule 60(b) provides, in pertinent part, as follows:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence ...; (3) fraud ..., misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, ... or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Subpart (6), invoked by Matarese, "confers broad discretion on the trial court to grant relief when 'appropriate to accomplish justice,'" *International Controls Corp. v. Vesco*, 556 F.2d 665, 668 n. 2 (2d Cir.1977) (quoting *Klapprott v. United States*, 335 U.S. 601, 615, 69 S.Ct. 384, 390, 93 L.Ed. 266 (plurality opinion of Black, J.), *modified on other grounds*, 336 U.S. 942, 69 S.Ct. 384, 93 L.Ed. 266 (1949)), *cert. denied*, 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 758 (1978); it constitutes a " 'grand reservoir of equitable power to do justice in a particular case,'" *Radack v. Norwegian America Line Agency, Inc.*, 318 F.2d 538, 542 (2d Cir.1963) (quoting 7 *Moore's Federal Practice*, ¶ 60.27 [2] at 60–295). It is "properly invoked where there are extraordinary circumstances, *Ackermann v. United States*,

340 U.S. 193, 199, 71 S.Ct. 209, 212, 95 L.Ed. 207 (1950); *see United States v. Cirami*, 563 F.2d [26, 32 (2d Cir.1977) ]; or where the judgment may work an extreme and undue hardship, *see United States v. Karahalias*, 205 F.2d 331, 333 (2d Cir. 1953)," *In re Emergency Beacon Corp.*, 666 F.2d 754, 759 (2d Cir.1981), and "should be liberally construed when substantial justice will thus be served." *Radack v. Norwegian America Line Agency, Inc.*, 318 F.2d at 542; *see also Dunlop v. Pan American World Airways, Inc.*, 672 F.2d 1044, 1051 (2d Cir.1982); *United States v. Cirami*, 563 F.2d at 32.

■ A postjudgment change in the law having retroactive application may, in special circumstances, constitute an extraordinary circumstance warranting vacation of a judgment. *See Nunnery v. Barber*, 23 Fed.R.Serv.2d 232 (4th Cir.1977) (denying Rule 60(b)(6) relief because change in law was not to have retrospective application); *Pierce v. Cook & Co.*, 518 F.2d 720 (10th Cir.1975) (Rule 60(b)(6) relief granted following change, in a related state case, of the state doctrine relied on in the federal diversity case), *cert. denied*, 423 U.S. 1079, 96 S.Ct. 866, 47 L.Ed.2d 89 (1976); *McGrath v. Potash*, 199 F.2d 166 (D.C.Cir.1952) (Rule 60(b)(6) relief granted following passage of new act by Congress eliminating statutory requirement on which judgment was based). We think it particularly appropriate for the district court to entertain a Rule 60(b)(6) motion on grounds of a retroactive change in the law in the context of a habeas corpus proceeding, in which "[c]onventional notions of finality of litigation have no place." *Sanders v. United States*, 373 U.S. 1, 8, 83 S.Ct. 1068, 1073, 10 L.Ed.2d 148 (1963); *id.* at 17, 83 S.Ct. at 1078 (court has discretion to grant a hearing on a successive petition for habeas corpus upon a showing that there has been an intervening change in the law).

■ An appeal from an order denying a rule 60(b)(6) motion brings before us only the denial of the motion, not the merits of the underlying judgment, *Browder v. Director, Illinois Department of Correc-*

*tions,* 434 U.S. at 263 n. 7, 98 S.Ct. at 560 n. 7 (dictum); *Daily Mirror, Inc. v. New York News, Inc.,* 533 F.2d 53, 56 (2d Cir.), *cert. denied,* 429 U.S. 862, 97 S.Ct. 166, 50 L.Ed.2d 140 (1976); 7 *Moore's Federal Practice,* ¶ 60.30[3], at 60–344 to 60–345. Our standard of review is whether the court abused its discretion in denying relief from the underlying judgment. *In re Emergency Beacon Corp.,* 666 F.2d at 760; *International Controls Corp. v. Vesco,* 556 F.2d at 670; 11 C. Wright & A. Miller, *Federal Practice and Procedure,* § 2857, at 158; *id.* § 2864, at 211–13. Given the framework within which the district court was required to consider Matarese's motion, we find no abuse of discretion in the denial of that motion.

In order to show that extraordinary circumstances warranting Rule 60(b)(6) relief existed in his case, Matarese filed an affidavit stating (1) that the district court had misapplied the rule of *Sandstrom v. Montana;* and (2) that he had not filed a notice of appeal from the 1981 Judgment principally because he had been proceeding *pro se,* had been ignorant of his right to appeal or to seek a certificate of probable cause, was uneducated, had difficulty reading at a fifth grade level, and no one at the prison at which he was then incarcerated would give him any advice as to his legal rights. He stated that only after being transferred to another prison did he learn of his right to seek a certificate of probable cause.

These statements were inadequate to show the extraordinary circumstances needed to justify vacation of a judgment pursuant to Rule 60(b)(6). The contention that the court's decision misapplied *Sandstrom* was inadequate, for a Rule 60(b)(6) motion may not be used as a substitute for appeal. *E.g., House v. Secretary of Health and Human Services,* 688 F.2d 7, 9 (2d Cir.1982); *Eutectic Corp. v. Metco, Inc.,* 597 F.2d 32, 34 (2d Cir.1979); 7 *Moore's Federal Practice* at ¶ 60.27[2], at 60–276 to 60–277. And Matarese's ignorance of postjudgment procedures provided no logical basis for the district court's reconsideration of the decision that preceded the judgment.

On this appeal, Matarese's appointed counsel argues that extraordinary circumstances warranting reconsideration of the decision underlying the 1981 Judgment arose from postjudgment decisions of this Court and the United States Supreme Court severely circumscribing the applicability of harmless-error analysis—*see Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (errors of constitutional dimension do not require reversal if they were, beyond a reasonable doubt, harmless)—to *Sandstrom* claims. The district court properly appears to have accepted the possibility of an intervening change in the law as an appropriate basis for entertaining Matarese's motion under Rule 60(b)(6). Thus, it noted that subsequent to the 1981 Judgment, this Court had issued several decisions exploring allegations of *Sandstrom*-type errors, and the 1983 decision of the Supreme Court in *Connecticut v. Johnson,* 460 U.S. 73, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983), considered the question of whether a *Sandstrom* violation could be deemed a harmless error. Stating that its 1981 decision was "buttressed" by these later decisions, the court implicitly found that there had been no intervening change in the law warranting the vacation of the 1981 Judgment.

Counsel here relies on still newer Supreme Court authority, *i.e., Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985), for the proposition that harmless-error analysis is rarely appropriate in the context of a *Sandstrom*-type claim. He argues that, absent a harmless-error analysis, Matarese's conviction must be vacated. While language in *Connecticut v. Johnson* and *Francis v. Franklin* may have warranted consideration of whether there had been a postjudgment change in the legal framework applicable to Matarese's claim, a more recent Supreme Court ruling, *Rose v. Clark,* — U.S. ——, 106 S.Ct. 3101, 3107, 92 S.Ct. 460 (1986), has made it clear that there has been no change in the law that would entitled Matarese to vacation of the 1981 Judgment.

In *Clark,* which was decided after the oral argument of this appeal, the Supreme Court made clear that harmless-error

analysis is entirely appropriate in assessing whether a *Sandstrom* error warrants vacation of a criminal conviction. The Court ruled that "an instruction that impermissibly shifted the burden of proof on malice ... is not 'so basic to a fair trial' that it can never be harmless." It stated that "[w]hen the verdict of guilty reached in a case in which *Sandstrom* error was committed is correct beyond a reasonable doubt, reversal of the conviction does nothing to promote the interest that the [*Sandstrom*] rule serves." *Id.*

Thus, although intervening court decisions may have injected some uncertainty as to the applicability of harmless-error analysis to *Sandstrom* claims, *Clark* has expressly stated that such analysis is appropriate. Since this was the analytical framework employed by the district court in reaching the decision underlying the 1981 Judgment, there has been no post-judgment change in the law warranting vacation of that judgment. We conclude that there was no abuse of the district court's discretion in its denial of the Rule 60(b)(6) motion.

## CONCLUSION

Insofar as the appeal purports to challenge the 1981 Judgment of the district court, it is dismissed. The 1983 Order denying the Rule 60(b)(6) motion is affirmed.