**Alfred MANCUSO, Petitioner,**

v.

**Charles SCULLY, Superintendent, Green Haven Correctional Facility; Robert Abrams, Attorney General of New York; and Elizabeth Holtzman, District Attorney of Kings County, Respondents.**

**No. 80 CV 1250.**

United States District Court,
E.D. New York.

Dec. 4, 1986.

See also, 818 F.2d 1.

Vivian Shevitz, Brooklyn, N.Y., for petitioner.

Elizabeth Holtzman, Dist. Atty., Kings County, Brooklyn, N.Y. by Janet Berk, Asst. Dist. Atty., for respondents.

## MEMORANDUM AND ORDER

PLATT, District Judge.

This case comes before us on a second petition for habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons stated below, we dismiss the petition and grant a certificate of probable cause.

Following a State jury trial, petitioner was convicted of felony murder on May 11, 1978. The underlying facts are more fully set out in *Mancuso v. Harris*, 677 F.2d 206 (2d Cir.), *cert. denied*, 459 U.S. 1019, 103 S.Ct. 382, 74 L.Ed.2d 514 (1982), familiarity with which is assumed.

On July 21, 1981, this Court adopted the Report and Recommendation of United States Magistrate John Caden and granted petitioner a new trial. The basis for the Court's decision was that the jury charge regarding intent [1] impermissibly shifted the burden of proof to the petitioner in violation of *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). The Second Circuit reversed, holding that the jury charge did not shift the burden of proof and that any possible error was harmless, 677 F.2d at 210–11, and the Su-

---

1. The portion of the charge upon which this Court based its decision is as follows:

 Everyone is presumed to intend the natural and probable consequences of his act and unless the act is done under circumstances or conditions that might preclude the existence of such intent, you, the jury, have to find, have the right to find the requisite intent from the proven actions of an individual.

preme Court denied certiorari, 459 U.S. 1019, 103 S.Ct. 382, 74 L.Ed.2d 514 (1982).

The present application seeks a reconsideration of the Second Circuit's decision, in light of the subsequent decision by the Supreme Court in *Connecticut v. Johnson*, 460 U.S. 73, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983). Petitioner also raises a second portion of the jury charge claiming that the same is a new ground for relief.

## RECONSIDERATION OF ORIGINAL APPLICATION

■ Petitioner argues that *Connecticut v. Johnson* adopted a rule requiring automatic reversal for *Sandstrom* errors, with a few rare and limited exceptions. *See* 460 U.S. at 87, 103 S.Ct. at 977 (plurality opinion of Blackmun, J.). As Chief Justice Burger pointed out in his dissent, however, only four Justices advocated an automatic reversal rule. *Id.* at 90, 103 S.Ct. at 979. Justice Stevens, who would have dismissed the petition for certiorari, joined those four only because doing so allowed the judgment of the State court to stand. *Id.* at 88–90, 103 S.Ct. at 978–979. Thus, there was no clear majority requiring automatic reversal.

The Supreme Court had long left undecided the issue of whether *Sandstrom* errors can ever be harmless. *See Francis v. Franklin*, 471 U.S. 307, 325, 105 S.Ct. 1965, 1977, 85 L.Ed.2d 344 (1985). In the recent case of *Rose v. Clark*, —— U.S. ——, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986), the Supreme Court seems to have resolved that question when it held 6–3 that harmless-error analysis under *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), applied to a jury instruction that created a rebuttable mandatory presumption in violation of *Sandstrom*.

In light of *Rose v. Clark*, we do not believe that *Connecticut v. Johnson* provides a basis for reconsidering the Second Circuit's opinion in this case. *See Matarese v. LeFevre*, 801 F.2d 98, 108 (2d Cir.1986), *citing Rose v. Clark*, —— U.S. ——, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986).

■ Furthermore, the Second Circuit held that there was no *Sandstrom* error in this case. The Court reasoned that the jury instruction contained ameliorative language and did not shift the burden of proof. 677 F.2d at 210. When viewed as a whole, the jury charge "merely [instructed] the jury as to a permissible method for reaching a conclusion as to whether Mancuso had the intent required" to convict him of felony murder. *Id.* at 211. The Second Circuit also concluded that, given the context of the entire charge and the degree to which Mancuso's intent was at issue, the instruction was harmless. *Id.* Thus, even if *Sandstrom* errors required automatic reversal, such a rule would not apply to this case.

As much as we might have once believed that the jury instruction violated *Sandstrom*, only the Second Circuit (or the Supreme Court) may reverse its decision. Accordingly, we decline to reconsider the previously addressed portion of the jury charge.

## ADDITIONAL GROUND FOR RELIEF

Petitioner now seeks to challenge the following additional portion of the jury charge given immediately after and in connection with the so-called *Sandstrom* instruction at his State trial:

> If you find from the actions of one of the several participants an intent to commit a certain crime, then anyone who was a co-principal or active participant in the crime also had such an intent.

Petitioner argues that this instruction impermissibly required the jury to transfer to him the criminal intent of any of the co-principals. The effect of the instruction is particularly egregious in this case, petitioner argues, because one of the co-principals testified for the government, and the jury could have imputed to petitioner that witness's admitted intent. Respondents argue that the Court should dismiss this claim under 28 U.S.C. § 2254 Rule 9 for failure to allege new grounds for relief after a prior determination on the merits.

Although petitioner presented the "transferred intent" portion of the instruction in

his original application to this Court, *see* Petitioner's Memorandum of Law, dated May 1, 1980, at 28, neither the Magistrate nor this Court found it necessary to consider that portion of the instruction, having granted relief based on the "natural consequences" instruction alone.

The Second Circuit, however, considered the entire charge on the element of intent. Although the Second Circuit did not analyze the transferred intent portion of the charge separately, it did conclude, after rejecting petitioner's objection to the "natural consequences" portion, that the entire intent instruction, "in the context of a lengthy, and otherwise unassailable charge, created no 'significant possibility that harm was done.'" 677 F.2d at 211.

 Even if we were to conclude that the newly challenged portion of the charge in isolation relieved the State of its burden of proving each element beyond a reasonable doubt,[2] we would still be required to view the instruction in context to see if the charge as a whole shifted the burden of proof. *Francis v. Franklin,* 471 U.S. 307, 315, 105 S.Ct. 1965, 1971, 85 L.Ed.2d 344 (1985); *Cupp v. Naughten,* 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). The Second Circuit has already examined the entire instruction concerning intent and approved it. 677 F.2d at 211. Moreover, even if we were to find that the instruction as a whole shifted the burden of proof, we would still need to consider the question whether the error caused any harm. *Rose v. Clark,* —— U.S. ——, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986). To that question the Second Circuit has, as indicated, already answered "No."

While arguably the Second Circuit's statements on these issues may be said to be *dicta,* nonetheless under the circumstances we feel we are required to follow that Court's indicated decision on both parts of the problem thus posed. *See* 677 F.2d at 211.

As this opinion was being finished, petitioner submitted a "Supplemental Affidavit in Support of a Writ" in which petitioner claims that respondents have changed their theory of petitioner's participation in the murder. According to petitioner, respondents argued to this Court and to the Second Circuit that petitioner was the actual killer, but that, when respondents opposed petitioner's application for a writ of certiorari, they argued to the Supreme Court that petitioner was not the actual killer.

 The only potential impact of this kind of change in theories is on the intent the State would be required to prove. Petitioner was charged with and convicted of felony murder, which requires proof of intent to commit the underlying felony, rather than intent to kill. This Court and the Second Circuit properly analyzed the challenged jury instruction in terms of its effect on the State's burden of proving intent to commit the underlying burglary. Therefore, even if the State did change theories, that change had no prejudicial effect on petitioner here[3] and thus has no effect on this decision.

CONCLUSION

 For the reasons stated above,[4] petitioner's application must be, and hereby is,

---

**2.** Under *Sandstrom,* a court must first determine what kind of presumption the instruction created by considering what a reasonable juror could have interpreted the words actually used to mean. 442 U.S. at 514–15, 99 S.Ct. at 2454. The "transferred intent" instruction appears to create a mandatory irrebuttable presumption. It is phrased as a statement of fact, *i.e.,* that if A and B are co-principals, and A had a certain intent, then B had that intent also. Furthermore, it does not contain the "unless" clause the Second Circuit found to be ameliorative in the "natural consequences" instruction.

**3.** If petitioner believed it had an effect on the decision of the Supreme Court to deny his appli-

cation for a writ, he should have called that Court's attention thereto at that time.

**4.** Respondents also argue that petitioner has failed to exhaust State remedies. Because we conclude that the Second Circuit has already reached and passed upon the merits of the claim, however, we do not address that argument, noting only that, even if the issue has not been adequately presented to the State courts, the exhaustion doctrine is driven by considerations of comity and is not a jurisdictional prerequisite. *Daye v. Attorney General of the State of New York,* 696 F.2d 186, 190–91 (2d Cir.1982), *cert. denied,* 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984). Here again we must defer

dismissed. As indicated above, however, the petition is far from frivolous and therefore the Court hereby issues the requisite certificate of probable cause pursuant to 28 U.S.C. § 2253.

SO ORDERED.

to the Second Circuit's prior decision in this case.