PRESERVE ENDANGERED AREAS OF
COBB'S HISTORY, INC.
("P.E.A.C.H."); Roger Peaster; Heidi
Peaster; Johnny Plunkett; Ruby Plunk-
ett; John Mowell; and, Marie Mowell

v.

UNITED STATES ARMY CORPS OF EN-
GINEERS; Togo D. West, Secretary of
the Army; Colonel Wayne M. Boy, Dis-
trict Engineer, Savannah District Corps
of Engineers; Necholous Ogden, Chief
Regulatory Branch, Savannah District
Corps of Engineers; United States Envi-
ronmental Protection Agency; Carol M.
Browner, Administrator; John H. Han-
kinson; Regional Administrator; and,
Cobb County, Georgia.

Civil No. 1:95–CV–1394–WCO.

United States District Court,
N.D. Georgia,
Atlanta Division.

Aug. 24, 1995.

Robert B. Remar, Susan Marie Garrett, Kirwan Parks Chesin & Remar, Atlanta, GA, for Preserve Endangered Areas of Cobbs' History, Inc., Roger Peaster, Heidi Peaster, Johnny Plunkett, Ruby Plunkett, John Mowell and Marie Mowell.

Patricia Rebecca Stout, Office of United States Attorney, N.D. GA, States Courthouse Atlanta, GA, Mark A. Brown, U.S. Department of Justice, Environment & Natural Resources Division, Wildlife & Marine Resources Section, Washington, DC pro hac vice, Naikang Tsao, U.S. Department of Justice Environment & Natural Resources Division, Environmental Defense Section, Washington, DC pro hac vice, Caroline M. Zander, U.S. Department of Justice Environmental/Natural Resources Division, General Litigation Section, Washington, DC pro hac vice, Rebecca R. Phillips, U.S. Army Corp of Engineers Office of Counsel, Savannah, GA, for U.S. Army Corps. of Engineers, Togo D. West, Wayne M. Boy, Necholus Ogden U.S. E.P.A., Carol M. Browner and John H. Hankinson.

Fred Douglas Bentley, Jr., Coleen Daugherty Hosack, Bentley Bentley & Bentley, Marietta, GA, Fred Douglas Bentley, Jr., Office of Cobb County Attorney Law Department, Marietta, GA, for Cobb County, Georgia.

Roy E. Barnes, Jerry A. Landers, Jr., Barnes Browning Tanksley & Casurella, Marietta, GA, for C.W. Matthews Contracting Company, Inc.

### ORDER

O'KELLEY, District Judge.

The captioned case is before the court for consideration of four motions:

(1) The federal defendants' motion to dismiss [14–1];

(2) Defendant Cobb County's motion for reconsideration [30–1];

(3) The federal defendants' motion for reconsideration [33–1]; and,

(4) The federal defendants' motion for extension of time [37–1].

Each motion will be considered in turn.

### The Federal Defendants' Motion to Dismiss [14–1]

As a preliminary matter, it should be noted that insofar as the motion to dismiss concerns an alleged failure to comply with certain notice provisions by plaintiffs, e.g., 33 U.S.C. § 1365(b) and 16 U.S.C. § 1540(g)(2), this purported deficiency has been cured by the amended complaint, which was filed within the requisite period set forth in the governing notice provisions. This position, advanced by plaintiffs' in their response to the pending motion, is conceded in the federal defendants' reply brief. Therefore, the court will focus on the two other grounds set forth in the motion to dismiss.

First, the federal defendants contend that Counts Three, Four, Seven, and Nine of the

amended complaint should be dismissed as violative of 33 U.S.C. § 1365(a)(2). Defendants argue that this section of the Clean Water Act ("CWA") only authorizes suits against the Administrator of the Environmental Protection Agency ("EPA"), and *not* against the U.S. Army Corps of Engineers, for a failure to perform non-discretionary duties.

Section 505(a) of the CWA sets forth the basis under which a citizen may initiate a private civil action. Such a suit may be brought:

> (a) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation, or
>
> (b) *against the Administrator* where there is an alleged failure of the Administrator to perform any act or duty under this chapter which is *not discretionary* with the Administrator.

33 U.S.C. § 1365(a) (emphasis added). The term "Administrator" refers to the administrator of the EPA. *Id.* at § 1251(d).

■ It is undisputed that the United States can be sued only if it has consented to be sued. Further, such consent must be found in an express and unambiguous statement. *See, e.g., United States v. Idaho, ex rel. Director, Idaho Dept. of Water Resources,* 508 U.S. 1, 5–7, 113 S.Ct. 1893, 1896, 123 L.Ed.2d 563 (1993). "Waivers of immunity must be 'construed strictly in favor of the sovereign,' *McMahon v. United States,* 342 U.S. 25, 27 [72 S.Ct. 17, 19, 96 L.Ed. 26] (1951), and not 'enlarge[d] ... beyond what the language requires.'" *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 685–86, 103 S.Ct. 3274, 3278, 77 L.Ed.2d 938 (1983) (*quoting Eastern Transportation Co. v. United States,* 272 U.S. 675, 686, 47 S.Ct. 289, 291, 71 L.Ed. 472 (1927)) (alterations in the original). Based on this well accepted legal principle, defendants argue that the language of CWA § 1365(a)(2) compels the court to dismiss the claims against the Corps of Engineers for lack of subject matter jurisdiction.

Plaintiffs, while acknowledging the apparent meaning of § 1365(a)2), argue that the court should look beyond the statute's plain meaning. In support of this argument, plaintiffs rely on a Fourth Circuit decision, *National Wildlife Federation v. Hanson,* 859 F.2d 313 (4th Cir.1988). The *Hanson* court held that it did not make sense that Congress would permit a suit against the EPA Administrator to challenge an erroneous wetlands determination, but not allow such a suit if the determination were made by the Corps and the EPA neglected to exercise its oversight authority. *Id.* at 316. Secondly, the *Hanson* court determined that coupling § 1365(a)(2) with FED.R.CIV.P. 20 yielded a means by which "citizens [could] ... sue the Administrator and join the Corps when the Corps abdicates its responsibility to make reasoned wetlands determinations and the Administrator fails to exercise the duty of oversight imposed by section 1344(c)." *Id.* While this statutory construction might be a logical means of citizen enforcement under the CWA, it is not the method selected by Congress, as evidenced by the unambiguous language of § 1365(a)(2). As noted by the federal defendants, the Supreme Court has recently reiterated the proper standard of statutory interpretation: "We have stated time and time again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *United States Department of Defense v. FLRA,* —— U.S. ——, ——, 114 S.Ct. 1006, 1016, 127 L.Ed.2d 325 (1994) (*quoting Connecticut National Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992)). This principle is of particular significance in the context of a waiver of statutory immunity. As discussed earlier, the Court has repeatedly mandated a demonstrably clear statement of intent in order to find a waiver of sovereign immunity by the federal government. In the absence of such a statement, any waiver will be construed narrowly. No such statement is evident in § 1365(a)(2).

■ Accordingly, to the extent that Counts Three, Four, Seven, and Nine of the

amended complaint allege violations by the United States Army Corps of Engineers pursuant to 33 U.S.C. § 1365(a)(2), those claims are hereby DISMISSED. Of course, to the degree that the Corps' decision is challenged under the Administrative Procedures Act based on violations of the National Environmental Policy Act, the National Historic Preservation Act, and the Endangered Species Act, the Corps remains a defendant in this civil action.

■ The federal defendants also assert a second basis for dismissal. The defendants contend that because the EPA Administrator's decision as to whether to veto a Corps' determination relating to a wetlands permit is a *discretionary* function, judicial review is foreclosed by the terms of the CWA and the Administrative Procedures Act ("APA"). Count Eight of the amended complaint alleges that the EPA abused its discretion in not vetoing the issuance of the permit. Assuming, *arguendo,* that this is correct, it seems that plaintiffs are conceding the discretionary nature of this oversight function. Such an interpretation is supported by the text of the CWA. The section providing for EPA review, states that the "Administrator is *authorized* to prohibit ... and *authorized* to deny or restrict the use of any defined area for specification...." 33 U.S.C. § 1344(c) (emphasis added). The use of the term "authorize" (as opposed to "shall") suggests a discretionary function. This interpretation has been sanctioned by the Supreme Court, albeit in a different context. *See e.g., Heckler v. Chaney,* 470 U.S. 821, 835, 105 S.Ct. 1649, 1657, 84 L.Ed.2d 714 (1985) (interpreting the term "authorize" in § 372 of the Food, Drug and Cosmetic Act, 21 U.S.C. § 372). Further, common usage of the word "authorize" is understood to imply a discretionary delegation of duty. The discretionary nature of the EPA's veto authority is also the interpretation adopted by the agency, as seen in the regulations enacted pursuant to 33 U.S.C. § 1344(c), which use the permissive "may," as opposed to the mandatory "must" or "shall." *See* 40 C.F.R. § 231.1(a) (1994); 40 C.F.R. § 231.3(a) (1994). Plaintiffs have offered no persuasive authority to the contrary. Instead, plaintiffs contend that to adopt the aforementioned

interpretation would render the citizen suit provision of § 1365(a)(2) impotent; the Corps cannot be sued as the Secretary is not named within the statute, and the EPA cannot be sued because the veto determination is a discretionary function. While plaintiffs' contentions may have some merit as a matter of policy, that is within the province of Congress and not this court. This court's constitutionally assigned function is to interpret the meaning of the statute. The plain language of the citizen's suit provision of the statute makes it clear that the EPA Administrator cannot be sued for misfeasance or nonfeasance in regard to a *discretionary* function. It is also important to note that the APA judicial review mechanism does not affect the finding set forth immediately above. While the APA does indeed provide an extensive judicial review procedure, it expressly states that such procedure applies "except to the extent that ... agency action is committed to *agency discretion* by law." 5 U.S.C. § 701(a)(2) (emphasis added). Although this exception is, admittedly, to be construed narrowly, *Heckler, supra,* at 830, 105 S.Ct. at 1655 (citations omitted), the explicit language of the CWA, notwithstanding the contentions of *Hanson,* mandate its applicability to the EPA's oversight authority afforded by 33 U.S.C. § 1344(c). Accordingly, Count Eight of the amended complaint is hereby DISMISSED.

■ Defendants further argue that Counts Three, Four, Seven, and Nine of the amended complaint, insofar as they allege claims against the EPA, should also be dismissed because they erroneously allege a failure to perform non-discretionary duties. Defendants argue that although plaintiffs allege a failure by the EPA to perform non-discretionary duties, there is no statutory citation to any provision of the CWA which creates such a mandatory duty. As discussed above, absent authority to the contrary, the court is compelled to view the EPA's role under § 1344(c) as discretionary. Defendants maintain that these Counts are essentially a particularized statement of Count Eight, and should therefore be dismissed under the same principles. Plaintiffs' reply to the pending motion has not articulated any statu-

tory authority setting forth a non-discretionary duty on behalf of the Administrator. Accordingly, Counts Three, Four, Seven, and Nine of the amended complaint, to the extent they allege violations by the EPA Administrator pursuant to 33 U.S.C. § 1365(a)(2), are hereby DISMISSED.

### Defendants' Motions for Reconsideration [30–1; 33–1]

■ All defendants have moved the court to reconsider its order dated June 30, 1995. The Local Rule governing motions for reconsideration states:

> Motions for reconsideration **shall not be filed as a matter of routine practice.** Whenever a party or attorney believes it is **absolutely necessary** to file a motion to reconsider ... [it] shall be filed with the Clerk of the Court within 10 days after the entry of the order or judgment....

LR 220–6, NDGa. (emphasis added). As indicated by the language of the aforementioned local rule, motions for reconsideration are not to be filed as a matter of course. In fact, the term "motion for reconsideration", as such, does not appear in the Federal Rules of Civil Procedure. The title of FED. R.CIV.P. 60(b), under which a so-called motion for reconsideration may be brought, further attests to its extraordinary nature ("Relief From Judgment or Order—Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc."). "[Rule 60(b)] is 'properly invoked where there are extraordinary circumstances, or where the judgment may work an extreme and undue hardship'...." *Mohammed v. Sullivan,* 866 F.2d 258, 260 (8th Cir.1989) (*quoting Matarese v. LeFevre,* 801 F.2d 98, 106 (2d Cir. 1986), *cert. denied,* 480 U.S. 908, 107 S.Ct. 1353, 94 L.Ed.2d 523 (1987)). The motion should be reserved for certain limited situations, namely the discovery of new evidence, an intervening development or change in the controlling law, or the need to correct a clear error or prevent a manifest injustice. *See, e.g., Kern–Tulare Water District v. City of Bakersfield,* 634 F.Supp 656, 665 (E.D.Cal 1986), *aff'd in part and rev'd in part,* 828 F.2d 514 (9th Cir.1987), *cert. denied,* 486 U.S. 1015, 108 S.Ct. 1752, 100 L.Ed.2d 214 (1988).

■ In its June 30 order, the court, citing *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), found that the administrative record was unquestionably the primary analytical factor to be considered in conducting an APA § 706 review. The *Overton Park* Court, in remanding the case before it to the district court for review consistent with its holding, stated:

> That review is to be based on the full administrative record that was before the Secretary at the time he made his decision. **But since the bare record may not disclose the factors that were considered or the Secretary's construction of the evidence it may be necessary for the District Court to require some explanation in order to determine if the Secretary acted within the scope of his authority and if the Secretary's action was justifiable under the applicable standard.**
>
> **The court may require the administrative officials who participated in the decision to give testimony explaining their action.** Of course, such inquiry into the mental processes of administrative decisionmakers is usually to be avoided.... And where there are administrative findings that were made at the same time as the decision ... there must be a strong showing of bad faith or improper behavior before such an inquiry can be made.

*Id.* at 420, 91 S.Ct. at 825 (citations omitted) (emphasis added). The *Overton Park* court went on to note that while the court is not required to conduct any additional inquiry, "[i]f the District Court decides that additional explanation is necessary, that court should consider which method will prove the most expeditious so that full review may be had as soon as possible." *Id.* at 420–21, 91 S.Ct. at 825. More recently, the Court has reiterated that "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.'" *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 730, 743, 105 S.Ct. 1598, 1600, 1606, 84 L.Ed.2d 643 (1985) (*quoting Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973)). Stated more precisely, "[t]he task of

the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court." *Id.* 470 U.S. at 743–44, 105 S.Ct. at 1607 *(citing Citizens to Preserve Overton Park, supra)*. Significantly, though, the Court did not say that the agency record was the *sole* evidence subject to review in application of the APA standard. In fact, the Court continued:

> If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. The reviewing court is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry.

*Id.* 470 U.S. at 744, 105 S.Ct. at 1607 (discussing a review pursuant to 5 U.S.C. § 706). The *Florida Power* holding, quoted in part above, makes it clear that this court must, to the extent possible, confine its review to the administrative record. However, the Court also recognized that in certain circumstances, albeit rarely, it may be necessary to go beyond that examination in order to reach a conclusion. It is critical to emphasize that in so doing the court is *not* conducting a *de novo* review of the merits of the administrative determination. Rather, the court is utilizing evidence extraneous to the administrative record in order to ascertain whether the administrative decision was "arbitrary or capricious." If the court ultimately concludes that the decision was improper under that standard of review, the appropriate remedy is a remand to the administrative agency issuing the decision. This preserves the integrity of the administrative process, and does not place the court in a position of substituting its opinion for that of the agency.

Based on the above analysis, essentially reproduced from the June 30 order, this court concluded that in conducting its review, it could go beyond the four corners of the administrative record, and seek additional material if such material would elucidate the review process. In accordance with that conclusion, the court instructed the parties to prepare a discovery plan which would enable them to acquire the necessary additional evidence.

After careful consideration, though, the court concludes that it is necessary to avail itself of the opportunity to reconsider the June 30 order. The court stands by its original conclusion that it is not bound *solely* by the confines of the administrative record. That said, the defendants are persuasive in asserting that a determination that extraneous material need be examined is premature prior to a comprehensive review of the administrative record by this court. Inasmuch as the need to review material outside the administrative record should be premised on some observed deficiency in the record itself, the court is convinced that it would be preferable to conduct a thorough review of the record initially and, if it is determined (1) that the record insufficiently supports the action taken, (2) that it is incomplete in some material fashion, (3) that certain factors were not considered, or (4) that there is a suggestion of bad faith or dereliction of duty in preparation of the record, the court then will order the production of further evidence, tailored to address the catalyst to that decision. In light of the nature of a judicial review of an administrative decision, this is a more judicious course of action, and more faithful to the letter and spirit of the APA.

Consistent with the finding set forth above, the court will also reconsider that portion of the June 30 order which directed the parties to prepare a discovery plan. That decision is reversed for the time being. In the event it is necessary to receive further evidence, that portion of the order will be reinstated to the extent necessary at the time such determination is made.

Accordingly, defendants motions for reconsideration are hereby GRANTED [30–1;33–1]. All parties are protected from discovery until further order. Each side will have the opportunity to file cross motions for summary judgment within 20 days of the date of

**384**

this order. Thereafter, each side will be afforded an additional 20 days within which to respond to the motions for summary judgment. The motions shall be based *solely* on the content of the administrative record, which has been submitted to this court. The parties should be mindful of the amendments to the local rules of this court, which limit the length of briefs to twenty-five pages. LR 220–1(d), NDGa (effective August 1, 1995). Because of the time sensitive nature of this matter, the court will endeavor to rule upon the motions in an expedited fashion.

### Federal Defendants' Motion For Extension of Time [37–1]

Defendant's motion for an extension of time seeks an enlargement of time, pursuant to FED.R.CIV.P. 6(b), in which to file an answer. In light of the pending motion to dismiss, such an enlargement is appropriate. Defendants may file their answer to the first amended complaint no later than 10 days after the date of this order. Defendants shall also submit answers to mandatory interrogatories simultaneously with the answer, in order to accommodate the preparation of the cross-motions for summary judgment. Accordingly, the federal defendants' motion of extension of time is hereby GRANTED [37–1].

To summarize:

(1) The federal defendants' motion to dismiss is hereby GRANTED [14–1];

(2) Defendant Cobb County's motion for reconsideration is hereby GRANTED [30–1];

(3) The federal defendants' motion for reconsideration is hereby GRANTED [33–1]; and,

(4) The federal defendants' motion for extension of time is hereby GRANTED [37–1].

IT IS SO ORDERED.