Gerda Dorothea DeWEERTH,
Plaintiff–Appellee,

v.

Edith Marks BALDINGER, Defendant–Third–Party–Plaintiff–Appellant,

Wildenstein & Co., Inc., Third–Party–Defendant–Appellant.

Nos. 83,127, Docket 93–7144, 93–7146.

United States Court of Appeals,
Second Circuit.

Argued Nov. 15, 1993.

Decided May 16, 1994.

Amended Opinion Filed After Petition
for Rehearing Oct. 27, 1994.

---

Joseph D. Becker, Becker, Glynn, Melamed & Muffly, New York City (John R. Horan, Fox & Horan, of counsel), for plaintiff-appellee.

Leslie Gordon Fagen, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendant-third-party-plaintiff-appellant.

Jeremy G. Epstein, Shearman & Sterling, New York City, for third-party-defendant-appellant.

Before: ALTIMARI and WALKER, Circuit Judges, and OWEN, District Judge.*

WALKER, Circuit Judge:

This appeal is the latest episode in a decade-long dispute over the ownership of an oil painting entitled "Champs de Blé à Vétheuil" by Claude Monet. The work by the celebrated French Impressionist was previously owned by plaintiff Gerda Dorothea DeWeerth, a German citizen. It was discovered missing from DeWeerth's family castle after

---

* Honorable Richard Owen, United States District Judge for the Southern District of New York, sitting by designation.

World War II, and was subsequently purchased by defendant Edith Marks Baldinger, a New York resident, from third-party-defendant Wildenstein & Co., a New York art gallery. Baldinger and Wildenstein & Co. (referred to collectively as "defendants") appeal from a judgment entered in the United States District Court for the Southern District of New York (Vincent L. Broderick, *Judge*) that granted DeWeerth's motion pursuant to Fed.R.Civ.P. 60(b) for relief from the final judgment entered in favor of defendants in accordance with our decision in *DeWeerth v. Baldinger,* 836 F.2d 103 (2d Cir.1987), *cert. denied,* 486 U.S. 1056, 108 S.Ct. 2823, 100 L.Ed.2d 924 (1988), and entered a new judgment in plaintiff's favor. Defendants contend that the district court was precluded from considering DeWeerth's motion by both jurisdictional principles and the doctrine of the law of the case; that the district court abused its discretion in ordering relief pursuant to Rule 60(b)(5) and (6); and that the district court wrongly entered judgment in favor of DeWeerth based on the erroneous conclusions that her claim was not barred by laches and that her right to possession of the painting was superior to Baldinger's. We conclude that the district court was not barred from considering DeWeerth's motion, but that it abused its discretion in ordering relief from the final judgment based on Rule 60(b).

## BACKGROUND

The facts of this case were fully explicated in the district court's initial *DeWeerth* opinion, 658 F.Supp. 688 (S.D.N.Y.1987), and only a brief recitation of them will be provided here.

DeWeerth claims that her father purchased the Monet from a Berlin gallery in 1908 and that she inherited the painting after her father's death in 1922. She had the painting in her possession until 1943 when she transferred it to her sister's castle in southern Germany for safekeeping during World War II. DeWeerth's sister discovered that the painting was missing in 1945, after the departure of American soldiers who had been quartered in her home. The Monet resurfaced in 1956, at which time Wildenstein & Co. acquired it from a Swiss art dealer. Baldinger subsequently purchased the painting from Wildenstein in 1957 in undisputed good faith.

In 1982, DeWeerth discovered that Baldinger was in possession of the Monet and demanded its return. When Baldinger refused, DeWeerth promptly commenced a diversity action to recover it. Baldinger in turn brought a third-party action against Wildenstein & Co. which was subsequently severed pursuant to Fed.R.Civ.P. 42(b). In April 1987, after a bench trial, Judge Broderick found that DeWeerth had established a superior right to possession of the Monet and issued a ruling in her favor. 658 F.Supp. 688 (S.D.N.Y.1987). The district court specifically rejected Baldinger's two principal defenses of limitations and laches. The district court concluded that the three-year statute of limitations applicable to this action, *see* N.Y.Civ. Prac.L. & R. § 214(3) (McKinney 1990), did not begin to run until Baldinger refused DeWeerth's demand for the painting. In answer to Baldinger's assertion of laches, the district court determined that DeWeerth had been reasonably diligent in the pursuit of the Monet after 1945 and that Baldinger had not been prejudiced by any delay in the demand for the painting's return. The district court ordered Baldinger to deliver the painting to DeWeerth.

In December 1987, another panel of this court reversed the district court's judgment on the ground that New York limitations law required a showing of reasonable diligence in locating stolen property and that DeWeerth had failed to make such a showing. 836 F.2d 103 (2d Cir.1987). We found it unnecessary to consider Baldinger's alternative arguments that DeWeerth was guilty of laches and that she had failed to prove superior title. On February 5, 1988, we denied DeWeerth's petition for a rehearing, and on February 19, 1988, our mandate directing that the judgment in favor of DeWeerth be reversed was filed in the district court. On June 13, 1988, the Supreme Court denied DeWeerth's petition for a writ of certiorari. 486 U.S. 1056, 108 S.Ct. 2823, 100 L.Ed.2d 924 (1988).

On May 2, 1991, DeWeerth brought a motion before us to recall the prior mandate and vacate the judgment in light of *Solomon R. Guggenheim Foundation v. Lubell,* 77 N.Y.2d 311, 567 N.Y.S.2d 623, 569 N.E.2d 426 (1991), a decision by the New York Court of Appeals that held that the New York statute of limitations applicable to this action did not require a showing of reasonable diligence in locating stolen property. We denied the motion without opinion on May 17, 1991.

On September 27, 1991, DeWeerth moved in the district court for relief pursuant to Fed.R.Civ.P. 60(b)(5) and (6) on the same ground set forth in her motion to recall the mandate. By Memorandum Order dated October 16, 1992, Judge Broderick granted DeWeerth's motion and once again ordered Baldinger to surrender the Monet to DeWeerth. 804 F.Supp. 539 (S.D.N.Y.1992). Judgment was entered on February 2, 1993, and this appeal followed.

## DISCUSSION

I. *Was the District Court Precluded from Considering DeWeerth's Rule 60(b) Motion?*

Defendants argue that the district court lacked jurisdiction to act upon DeWeerth's Rule 60(b) motion and, furthermore, that any ruling in DeWeerth's favor was precluded by the Second Circuit's denial of DeWeerth's motion for recall of its mandate. We reject both contentions.

### A. *Jurisdiction*

■ Defendants contend that the district court improperly considered DeWeerth's Rule 60(b) motion because only the Second Circuit could alter or set aside its mandate. In taking jurisdiction over DeWeerth's post-judgment application, the district court properly relied on *Standard Oil Co. v. United States,* 429 U.S. 17, 97 S.Ct. 31, 50 L.Ed.2d 21 (1976) (per curiam). In that case, the Supreme Court made clear that a party wishing to pursue a Rule 60(b) motion to reopen a case that had been reviewed on appeal was not required to obtain leave of the appellate court or a withdrawal of the appellate court's

mandate before proceeding in the district court. The Court reasoned that the district judge would not be flouting the existing mandate by acting on the motion since the appellate decision related only "to the record and issues then before the court, and [did] not purport to deal with possible later events." 429 U.S. at 18, 97 S.Ct. at 32.

Defendants counter that our decision in *Eutectic Corp. v. Metco, Inc.,* 597 F.2d 32 (2d Cir.1979) (per curiam), established the proposition that "where an appellant argues that the appellate court made a mistake, only the appellate court has jurisdiction to correct that mistake." Defs. Br. at 17–18. This statement mischaracterizes the holding in *Eutectic,* which decided only that a district court does not have jurisdiction to alter an appellate ruling where the appellate court has already considered and rejected the basis for the movant's Rule 60(b) motion. *Eutectic* did not discuss the rule established in *Standard Oil* that a district court may consider a Rule 60(b) motion when "later events" arise that were not previously considered by the appellate court. Despite *Eutectic*'s silence regarding *Standard Oil,* our court subsequently recognized the authority of *Standard Oil* in *Fine v. Bellefonte Underwriters Insurance Co.,* 758 F.2d 50 (2d Cir.), *cert. denied,* 474 U.S. 826, 106 S.Ct. 86, 88 L.Ed.2d 70 (1985). There, we upheld the district court's refusal to consider a Rule 60(b) motion since a *Standard Oil* situation had not been presented. We stated:

> Our previous ruling was the law of the case, and the district judge correctly found that it had no jurisdiction to review an appellate court's decision. Judge Sweet correctly noted that the appellants cite no material change of circumstances or newly discovered evidence so as to bring the matter under the aegis of *Standard Oil Co. v. United States.*

*Id.* at 52 (citations omitted); *see also Seese v. Volkswagenwerk, A.G.,* 679 F.2d 336, 337 (3d Cir.1982) (per curiam) (Rule 60(b) movant did not fit within *Standard Oil* because basis for its motion was already considered by the court of appeals and the Supreme Court).

■ Based on DeWeerth's assertion that the *Guggenheim* decision constitutes a

"change in circumstances" that was not considered by the appellate court, we conclude that, unless our post-*Guggenheim* refusal to recall the mandate constitutes a binding consideration of plaintiff's claim, the district court had jurisdiction to review her motion for relief under Rule 60(b). *See LSLJ Partnership v. Frito–Lay, Inc.,* 920 F.2d 476, 479 (7th Cir.1990) (district court has jurisdiction to hear Rule 60(b) motion based upon alleged change in law arising after appellate court mandate). We now turn to the effect, if any, of our post-*Guggenheim* refusal to recall the mandate.

### B. *The Law of the Case*

Defendants argue that *Eutectic* still applies in this case because the basis for DeWeerth's Rule 60(b) motion was presented to and rejected by this court in the course of DeWeerth's recall motion. Defendants' argument presumes that this court's denial of the recall motion should be construed as a comprehensive rejection on the merits of every argument presented in support of the motion. While this presumption holds true for arguments presented in petitions for rehearing, *see Fine,* 758 F.2d at 53, defendants have not brought to our attention any authority that applies the same presumption where the argument in question was presented in a motion to recall an appellate court's mandate.

■■■ In the absence of any authority on this point, we turn to the well-established principle that the doctrine of the law of the case "applies to issues that have been decided either expressly or by necessary implication." *Doe v. New York City Dep't of Social Servs.,* 709 F.2d 782, 788 (2d Cir.) (internal quotation omitted), *cert. denied,* 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983); *see also Panama Processes, S.A. v. Cities Serv. Co.,* 789 F.2d 991, 994 (2d Cir.1986) ("While it is true that issues considered and disposed of by an appellate court on appeal cannot thereafter be altered by a district court, it may consider matters not explicitly or implicitly decided.") (citations omitted). In the absence of a statement of reasons by the circuit panel for the denial of DeWeerth's recall motion, the district court determined that the panel did not necessarily reject DeWeerth's arguments regarding the *Guggenheim* decision on the merits. On the contrary, the district court inferred that the panel denied DeWeerth's motion for the procedural reason that granting the requested relief was unnecessary in light of *Standard Oil*'s authorization to move in the first instance in the district court under Rule 60(b) where circumstances have changed.

■■■ Given DeWeerth's argument that she was seeking relief from the judgment based on a change in circumstances arising from the *Guggenheim* decision, she was not required to move for a recall of the court of appeals' mandate in order to pursue a Rule 60(b) motion in the district court, and the denial of her recall motion could as easily have been based on this ground as on the merits. Thus, the recall denial cannot be presumed to serve as a substantive decision barring her from seeking further relief in the district court. Indeed, such a presumption would contravene the Supreme Court's instruction in *Standard Oil* that the trial court, as opposed to the court of appeals, " 'is in a much better position to pass upon the issues presented in a motion pursuant to Rule 60(b).' " 429 U.S. at 19, 97 S.Ct. at 32 (quoting *Wilkin v. Sunbeam Corp.,* 405 F.2d 165, 166 (10th Cir.1968)). Post-judgment applications to modify a judgment for a ground covered by Rule 60(b) frequently are better made in the district as opposed to the circuit court. This is true even where the alleged change of circumstances is exclusively legal, since a decision to reopen an action under Rule 60(b) will necessarily require fact-intensive weighing of the equities in a particular case, a task best undertaken in the first instance by the district courts.

Given these procedural circumstances, the district court properly determined that the basis for DeWeerth's Rule 60(b) motion had not been decided either explicitly or by necessary implication by this court, and that it was therefore free to rule on the application as it saw fit. Thus, the district court in this case had jurisdiction to consider DeWeerth's motion for relief from the judgment and was not barred from granting it based on this court's previous denial of her motion to recall our mandate.

II. *Did the District Court Abuse its Discretion in Granting DeWeerth's Rule 60(b) Motion?*

■ The district court granted DeWeerth's motion for relief from the final judgment under Rule 60(b)(6) and, alternatively, under Rule 60(b)(5). A "district court's grant or denial of relief under Rule 60(b), unless rooted in an error of law, may be reversed only for abuse of discretion." *Twelve John Does v. District of Columbia,* 841 F.2d 1133, 1138 (D.C.Cir.1988); *see also Matarese v. LeFevre,* 801 F.2d 98, 107 (2d Cir.1986), *cert. denied,* 480 U.S. 908, 107 S.Ct. 1353, 94 L.Ed.2d 523 (1987).

### A. *The Rule 60(b)(6) Determination*

Rule 60(b) provides that the district court may relieve a party or a party's legal representative from a final judgment, order, or proceeding in five enumerated circumstances and, according to the sixth subpart, for "any other reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b)(6). We have held that subpart (6) is "properly invoked where there are extraordinary circumstances or where the judgment may work an extreme and undue hardship." *Matarese,* 801 F.2d at 106 (internal quotations and citations omitted).

Judge Broderick determined that the *Guggenheim* decision, and its import for this case, constituted an "extraordinary circumstance" justifying relief under Rule 60(b)(6). Like *DeWeerth, Guggenheim* involved a suit by the owner of an allegedly stolen art object against the subsequent good faith purchaser for return of the stolen item. In the first appeal in *DeWeerth,* we held that New York's applicable statute of limitations required the previous owner to demonstrate that she had acted with reasonable diligence in attempting to locate the stolen object, and that absent such a showing, the owner's otherwise timely suit would be barred. 836 F.2d at 108. In *Guggenheim,* the New York Court of Appeals not only applied a contrary rule, but also expressly stated that the conception of New York law that we reached three years earlier in *DeWeerth* was wrong. In a unanimous decision, the Court of Appeals held that New York had a clearly established rule that the statute of limitations does not start to run until a *bona fide* purchaser refuses an owner's demand for return of a stolen art object, and that the Second Circuit should not have modified this rule by imposing a duty of reasonable diligence. 77 N.Y.2d at 318, 567 N.Y.S.2d 623, 569 N.E.2d 426. It reasoned that the Second Circuit's decision contravened New York's long-standing policy of favoring owners over *bona fide* purchasers so that New York would not become a haven for stolen art. *Id.* at 319, 567 N.Y.S.2d 623, 569 N.E.2d 426.

Based on the New York Court of Appeals' opinion, the district court determined that DeWeerth would have prevailed in this case had she originally brought her suit in the New York state courts. It then held that *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny entitled plaintiff to a modification of the final judgment in this case to avoid this inconsistency. It determined that the countervailing interest of both the parties and the courts in the finality of litigation was outweighed by the need "to prevent the working of an extreme and undue hardship upon plaintiff, to accomplish substantial justice and to act with appropriate regard for the principles of federalism which underlie our dual judicial system." 804 F.Supp. at 550.

■ We have carefully considered the circumstances analyzed by the district court and conclude that they do not warrant relief under Rule 60(b)(6). While acknowledging that Judge Broderick engaged in a scholarly and thorough discussion of the issues, we think that his decision inappropriately disturbed a final judgment in a case that had been fully litigated and was long since closed. In our view, *Erie* simply does not stand for the proposition that a plaintiff is entitled to reopen a federal court case that has been closed for several years in order to gain the benefit of a newly-announced decision of a state court. The limited holding of *Erie* is that federal courts sitting in diversity are bound to follow state law on any matter of substantive law not "governed by the Federal Constitution or by Acts of Congress." 304 U.S. at 78, 58 S.Ct. at 822. However, the fact that federal courts must follow state law

when deciding a diversity case does not mean that a subsequent change in the law of the state will provide grounds for relief under Rule 60(b)(6). *See Brown v. Clark Equip. Co.,* 96 F.R.D. 166, 173 (D.Me.1982) ("mere change in decisional law does not constitute an 'extraordinary circumstance'" under Rule 60(b)(6), especially where "[p]laintiffs elected to proceed in the federal forum, thereby voluntarily depriving themselves of the opportunity to attempt to persuade the [state court]"); *Atwell v. Equifax, Inc.,* 86 F.R.D. 686, 688 (D.Md.1980) (change in the state decisional law upon which appellate court based decision held "insufficient to warrant reopening a final judgment"). This principle also applies in federal cases where the Supreme Court has changed the applicable rule of law. *See Picco v. Global Marine Drilling Co.,* 900 F.2d 846, 851 (5th Cir.1990); *Travelers Indem. Co. v. Sarkisian,* 794 F.2d 754, 757 (2d Cir.), *cert. denied,* 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 253 (1986).

■ DeWeerth argues that this case is distinguishable because the state court did not announce a "change in the law," but rather clarified that New York law is—and always was—contrary to what the federal court held it to be. While we agree that *Guggenheim* did not involve a "change in the law" in the sense that it adopted a rule different from one that previously existed, we do not agree that *Guggenheim* stated that the question decided by the *DeWeerth* panel had long been settled in New York. The *Guggenheim* court stated only that New York's demand and refusal rule was well established; it did not state that the question of whether a due diligence requirement should be added to this rule was clearly settled. In fact, no earlier New York case had addressed this issue. The earlier *DeWeerth* panel noted that this question was an open one; although it could have certified the question to the New York Court of Appeals, it chose to decide the issue itself since it did not think the issue would "recur with sufficient frequency to warrant use of the certification procedure." 836 F.2d at 108 n. 5.

■ When confronted with an unsettled issue of state law, a federal court sitting in diversity must make its best effort to predict how the state courts would decide the issue. *Stafford v. International Harvester Co.,* 668 F.2d 142, 148 (2d Cir.1981). The comprehensive opinion by now Chief Judge Jon O. Newman in *DeWeerth* accordingly surveyed New York caselaw and determined that a New York court called upon to decide the issue would be likely to impose a requirement of due diligence. The decision was based in part on the fact that plaintiff's argument would create an incongruity in the treatment of *bona fide* purchasers and thieves. In New York, the three-year statute of limitations starts running against thieves once the owner discovers that the art object has been stolen, while under plaintiff's theory, it would not start running against a good faith purchaser until he refused the owner's request to return the art object. The court determined in *DeWeerth* that this rule conflicted with a policy inherent in certain New York cases of protecting *bona fide* purchasers of stolen objects from stale claims by alleged owners. 836 F.2d at 108–09. Based on this incongruity, New York's policy of discouraging stale claims in other settings, and the fact that in most other states the limitations period begins to run when a good faith purchaser acquires stolen property thereby prompting due diligence on the part of the previous owner, we determined that New York courts would adopt a due diligence requirement for owners attempting to locate stolen property.

It turned out that the *DeWeerth* panel's prediction was wrong. However, by bringing this suit, DeWeerth exposed herself to the possibility that her adversaries would argue for a change in the applicable rules of law. By filing her state law claim in a federal forum, she knew that any open question of state law would be decided by a federal as opposed to a New York state court. The subsequent outcome of the *Guggenheim* decision does not impugn the integrity of the *DeWeerth* decision or the fairness of the process that was accorded DeWeerth. The result in this case would be no different if DeWeerth had filed her claim in state court and Baldinger had removed the action to federal court. The very nature of diversity jurisdiction leaves open the possibility that a

state court will subsequently disagree with a federal court's interpretation of state law. However, this aspect of our dual justice system does not mean that all diversity judgments are subject to revision once a state court later addresses the litigated issues. Such a rule would be tantamount to holding that the doctrine of finality does not apply to diversity judgments, a theory that has no basis in *Erie* or its progeny.

We believe that the prior *DeWeerth* panel made a reasonable ruling on the due diligence question given the information presented to it. In fact, a key reason for the *Guggenheim* court's contrary conclusion was not even presented to the *DeWeerth* panel as part of the parties' original briefing. In deciding not to adopt a due diligence requirement, the *Guggenheim* decision placed considerable weight on the fact that efforts to modify the demand and refusal rule by the New York State Legislature were unsuccessful. Specifically, in July 1986 Governor Mario Cuomo vetoed a bill passed by both houses of the State Legislature that would have caused the statute of limitations to start running from the time an art owner discovered or reasonably should have discovered the whereabouts of a work of art when bringing suit against certain not-for-profit institutions. As part of his veto message, Governor Cuomo stated that if the bill became law, it would have caused New York to become "a haven for cultural property stolen abroad." *See Guggenheim,* 77 N.Y.2d at 319, 567 N.Y.S.2d 623, 569 N.E.2d 426. The *Guggenheim* court concluded that "[t]he history of this bill and the concerns expressed by the Governor in vetoing it, when considered together with the abundant case law spelling out the demand and refusal rule, convince us that that rule remains the law in New York and that there is no reason to obscure its straight-forward protection of true owners by creating a duty of reasonable diligence." *Id.* The existence of this bill was not discussed in the *DeWeerth* opinion and was not brought to the attention of the court until DeWeerth filed a petition for rehearing. It is well established in this circuit that arguments raised for the first time on a petition for rehearing are deemed abandoned unless manifest injustice would otherwise result. *Anderson v. Branen,* 27

F.3d 29, 30 (2d Cir.1994). It is thus likely that the prior *DeWeerth* panel deemed DeWeerth to have waived a key component of the argument that was ultimately successful before the New York Court of Appeals.

We conclude that the prior *DeWeerth* panel conscientiously satisfied its duty to predict how New York courts would decide the due diligence question, and that *Erie* and its progeny require no more than this. The fact that the New York Court of Appeals subsequently reached a contrary conclusion in *Guggenheim* does not constitute an "extraordinary circumstance" that would justify reopening this case in order to achieve a similar result. There is nothing in *Erie* that suggests that consistency must be achieved at the expense of finality, or that federal cases finally disposed of must be revisited anytime an unrelated state case clarifies the applicable rules of law. Attempting to obtain such a result through Rule 60(b)(6) is simply an improvident course that would encourage countless attacks on federal judgments long since closed. While our conclusion relies in part on our belief that the prior *DeWeerth* decision fully comported with *Erie* and did not, as plaintiff suggests, mistakenly apply settled state law and reach a clearly wrong result, we note that even if those were the circumstances, the doctrine of finality would still pose a considerable hurdle to reopening the final judgment in this case. Whether, in such circumstances, the result would be different if the issue were raised within one year pursuant to Rule 60(b)(1) is an issue we need not decide.

The caselaw relied on by the district court as support for its decision is distinguishable from the present case. In *Pierce v. Cook & Co.,* 518 F.2d 720 (10th Cir.1975), *cert. denied,* 423 U.S. 1079, 96 S.Ct. 866, 47 L.Ed.2d 89 (1976), the Tenth Circuit granted Rule 60(b)(6) relief based on an Oklahoma Supreme Court decision that undermined the basis for the Tenth Circuit's three-year-old dismissal of plaintiff's action. However, a major factor in the *Pierce* decision was that the change in state law would have caused federal and state tort actions arising out of the same accident and involving the same parties to have opposite results. *See id.* at

723. Whatever the merits of this rationale, as to which we express no opinion, it cannot justify the district court's decision in this case since *DeWeerth* and *Guggenheim* do not arise out of the same facts.

In *American Iron & Steel Institute v. EPA,* 560 F.2d 589 (3d Cir.1977), *cert. denied,* 435 U.S. 914, 98 S.Ct. 1467, 55 L.Ed.2d 505 (1978), the Third Circuit recalled its mandate because a subsequent Supreme Court case called into question the reasoning of the Third Circuit's decision issued one year and four months earlier. However, the court expressly stated that the mandate was recalled in part because the original panel decision placed on the defendant "continuing" obligations the validity of which was now suspect. *See id.* at 599. As discussed more fully below, the judgment in *DeWeerth* was finite in nature and did not have ongoing consequences for the parties involved. The other cases cited by the district court have fewer factual similarities to the instant case and provide even less persuasive authority for its holding.

We believe that the district court abused its discretion in ruling that the important interest in the finality of the judgment in this case, which was more than four years old at the time of that ruling, was outweighed by any injustice DeWeerth believes she has suffered by litigating her case in the federal as opposed to the state forum. Accordingly, we reverse the district court's decision granting her motion under Rule 60(b)(6).

### B. *The Rule 60(b)(5) Determination*

Rule 60(b)(5) provides that a court may relieve a party from a final judgment where "the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application." Fed.R.Civ.P. 60(b)(5). The district court ruled that DeWeerth was entitled to relief under the prospective application clause of this Rule. Defendants contend that the final judgment in this case does not have prospective application and therefore is not subject to being reopened under this clause.

Since this circuit has never attempted to define the term "prospective application" as utilized in Rule 60(b)(5), we turn to a decision on this issue by the District of Columbia Court of Appeals. In *Twelve John Does,* the court analyzed the two Supreme Court cases that led to the promulgation of the prospective application clause, *United States v. Swift & Co.,* 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932), and *Pennsylvania v. Wheeling & Belmont Bridge Co.,* 59 U.S. (18 How.) 421, 15 L.Ed. 435 (1856), and concluded that the standard to be applied "in determining whether an order or judgment has prospective application within the meaning of Rule 60(b)(5) is whether it is 'executory' or involves 'the supervision of changing conduct or conditions,' within the meaning of *Wheeling* and *Swift.*" 841 F.2d at 1139. In *Wheeling,* the Court determined that the part of its former decree that directed the abatement of the construction of a bridge spanning the Ohio River was "executory" in nature since it required not only the removal of the bridge, but enjoined defendants against any reconstruction or continuance, and, as a "continuing decree," could be modified in light of a subsequent congressional act declaring the bridge lawful. 59 U.S. at 431. In *Swift,* the Court rejected a request to modify a previously-issued injunction in light of changed circumstances, but nonetheless observed that a "continuing decree of injunction directed to events to come," which involves "the supervision of changing conduct or conditions," is always subject "to adaptation as events may shape the need." 286 U.S. at 114, 52 S.Ct. at 462.

In practical terms, these standards mean that judgments involving injunctions have "prospective application," while money judgments do not. *See Twelve John Does,* 841 F.2d at 1139. The district court recognized this dichotomy and determined that the final judgment in this case was more similar to an injunction than a money judgment. It reasoned that the relief DeWeerth sought in bringing this suit would require Baldinger to perform the future act of physically returning the Monet and that the judgment rendered would have a continuing effect on future custody of the painting. It therefore concluded that the final judgment

in this case had "prospective application" under Rule 60(b)(5). 804 F.Supp. at 551.

We think this conclusion was erroneous as a matter of law. The nature of the judgment sought in this case was a declaration of rights regarding title to personal property. The fact that physical transfer of the Monet would have been required to comport with the judgment if DeWeerth had prevailed does not render the judgment "executory." A similar transfer of assets is also required where the court enters a money judgment. Even if the district court in this case were involved in enforcing an ordered transfer, its involvement would not constitute "supervision of changing conduct or conditions."

DeWeerth's argument that declaratory judgments may have prospective application is also unpersuasive. The types of declaratory judgments referred to by DeWeerth, orders of disbarment and judgments which form a lien on property, affect events that happen in the future, and thus are distinguishable from the final judgment in this case, which simply resolved the parties' rights based on a past dispute. DeWeerth's reliance on *Moore's Federal Practice* for this point is misplaced since the treatise clearly recognizes the distinction between declaratory judgments directed at events to come, which may qualify for relief under Rule 60(b)(5) as though they were continuing injunctions, and declaratory judgments in which rights are fully accrued, which do not fall under the purview of the Rule. *See* 7 Moore & Lucas, *Moore's Federal Practice* ¶ 60.26[4], at 60–262 n. 36 (1983).

As such, the only prospective effect of the court's judgment is its bar to future relitigation of custody to the painting. The district court relied on *Kirksey v. City of Jackson,* 714 F.2d 42 (5th Cir.1983), for the proposition that the *res judicata* effect of a judgment may justify relief under Rule 60(b)(5) where there is a subsequent change in law. 804 F.Supp. at 551 n. 11. The language in *Kirksey* relied upon was dicta,

which stated that "[i]f a dismissal would bar a new and independent action between the same parties based on the same claims ... then it would have 'prospective application' by virtue of the continuing effect of the bar." 714 F.2d at 43. This position has been called into doubt by our circuit, *see Sarkisian,* 794 F.2d at 757 n. 4, and was expressly criticized by the D.C.Circuit in *Twelve John Does,* 841 F.2d at 1139–40. Indeed, *Kirksey* appears to have been repudiated by the Fifth Circuit itself, which has since held that a judgment is not prospective under Rule 60(b)(5) where its "only arguably prospective effect ... is that it precludes relitigation of the issues decided." *Picco,* 900 F.2d at 851. Accordingly, we conclude that the final judgment in this case did not have prospective application as this term is utilized in Rule 60(b)(5) and that the district court's holding to the contrary was an error of law requiring reversal.

Because of our decision that it was inappropriate for the district court to grant relief under either Rule 60(b)(6) or 60(b)(5), it is unnecessary for us to consider defendants' further arguments that the district court wrongly decided the merits of their laches defense and the question of superior title.

### CONCLUSION

For the foregoing reasons, we reverse the judgment of the district court.

OWEN, District Judge.

I respectfully dissent.

The majority recognizes that in dismissing Mrs. DeWeerth's action on New York statute of limitations grounds, the prior "*DeWeerth* panel's prediction was wrong." It was wrong in adding to New York's well-established demand and refusal rule a due diligence requirement, which the panel then found had not been met.[1] Nevertheless, the majority leaves the dismissal standing, asserting first, that the prior panel was confronted with "an unsettled issue of state law," and second, that

---

1. The prior panel stated as follows, 836 F.2d at 109–10:

In light of New York's policy of favoring the good faith purchaser and discouraging stale claims and the approach to actions to recover property in other jurisdictions, we hold that under New York law, an owner's obligation to make a demand without unreasonable delay includes an obligation to use due diligence to locate stolen property.

the doctrine of finality of judgments outweighs "any injustice DeWeerth believes she has suffered by litigating her case in the federal as opposed to the state forum."

I am unable to accept either of these conclusions. As to the majority's view that the pre-*DeWeerth* New York law was "unsettled", no prior New York statute of limitations ruling had any suggestion of a pre-demand due diligence requirement, or that the issue was ever raised, or even could have been considered.[2] The New York Court of Appeals in *Gillet v. Roberts*, 57 N.Y. 28 in 1874, stated at 34:

> The rule is a reasonable and just one, that an innocent purchaser of personal property from a wrongdoer shall first be informed of the defect in his title, and have an opportunity to deliver the property to the true owner, before he shall be made liable as a tort feasor for a wrongful conversion.

This was followed by such cases as *Cohen v. M. Keizer, Inc.*, 246 App.Div. 277, 285 N.Y.S. 488 (1st Dep't. 1936), 285 N.Y.S. 488 at 489:

> However, [defendant's] possession having been lawful and not tortious in the first instance, a demand upon him and his refusal to surrender possession before the commencement of the suit was necessary.

Thereafter, *Menzel v. List*, 22 A.D.2d 647, 253 N.Y.S.2d 43, 44 (1st Dep't. 1964), *on remand*, 49 Misc.2d 300, 267 N.Y.S.2d 804 (Sup.Ct.N.Y.Co.1966), *modified on other grounds*, 28 A.D.2d 516, 279 N.Y.S.2d 608 (1st Dep't. 1967), *modification rev'd*, 24 N.Y.2d 91, 298 N.Y.S.2d 979, 246 N.E.2d 742 (1969), again held that "a demand by the rightful owner is a substantive, rather than a procedural, prerequisite to the bringing of an action for conversion by the owner[,]" and therefore, "the statute of limitations did not begin to run until demand and refusal." *Id.* 22 A.D.2d at 647, 253 N.Y.S.2d at 44.[3]

This well-established New York law, as I view it, was further confirmed prior to our 1987 *DeWeerth* opinion by the fact that in 1986 a bill passed the New York legislature proposing to institute a "discovery rule" providing that as to certain not-for-profit institutions, the statute of limitations would run from the time those institutions gave notice, as specified in the bill, that they were in possession of a particular object. The bill was vetoed by Governor Cuomo. The majority recognizes the fact, as do I, that the fate of this bill is wholly consistent with the complete absence in any pre-*Guggenheim* authorities of any such requirement. As *Guggenheim* itself observes, 79 N.Y.2d at 319, 567 N.Y.S.2d 623, 569 N.E.2d 426.

The history of this bill and the concerns expressed by the Governor in vetoing it, when considered together with the abundant case law spelling out the demand and refusal rule, convince us that that rule remains the law in New York and that there is no reason to obscure its straightforward protection of true owners by creating a duty of reasonable diligence.

Thereafter, the first *DeWeerth* opinion having issued in 1987 with certiorari denied in June 1988, the New York Court of Appeals in February 1991, some two and one-half years later in *Guggenheim Foundation v. Lubell*, 77 N.Y.2d 311, 567 N.Y.S.2d 623, 569 N.E.2d 426, specifically focused on this question and reaffirmed New York Law, stating at 77 N.Y.2d at 317–18, 567 N.Y.S.2d 623, 569 N.E.2d 426:

> New York case law has long protected the right of the owner whose property has been stolen to recover that property, even if it is in the possession of a good-faith purchaser for value (*see, Saltus & Saltus v. Everett*, 20 Wend 267, 282). There is a three-year Statute of Limitations for recovery of a chattel (CPLR 214[3] ). The

---

**2.** This would appear so, because the cause of action does not even come into existence under New York law until a demand is made and there is a refusal. *See,* New York authorities, *infra.* New York law does, of course, give consideration to the question of reasonable diligence in the context of a laches defense. *Guggenheim Foundation v. Lubell,* 77 N.Y.2d 311 at 321, 567 N.Y.S.2d 623, 569 N.E.2d 426 (1991).

**3.** In *Kunstsammlungen Zu Weimar v. Elicofon,* 536 F.Supp. 829, 848–49, (E.D.N.Y.1981), the District Court for the Eastern District of New York in 1981 thoroughly reviewed the New York authorities and confirmed the foregoing.

rule in this State is that a cause of action for replevin against the good-faith purchaser of a stolen chattel accrues when the true owner makes demand for return of the chattel and the person in possession of the chattel refuses to return it. (see, e.g., *Goodwin v. Wertheimer*, 99 N.Y. 149, 153; [1 N.E. 404] *Cohen v. Keizer, Inc.*, 246 App.Div. 277) [285 N.Y.S. 488] ). Until demand is made and refused, possession of the stolen property by the good-faith purchaser for value is not considered wrongful (see, e.g., *Gillet v. Roberts*, 57 N.Y. 28, 30–31; *Menzel v. List*, 49 Misc.2d 300, 304–05, [267 N.Y.S.2d 804], *mod as to damages* 28 A.D.2d 516, [279 N.Y.S.2d 608], *rev'd* as to modification 24 N.Y.2d 91, 298 N.Y.S.2d 979, 246 N.E.2d 742).

Having thus pronounced, *Guggenheim* went on to state, 77 N.Y.2d at 318, 567 N.Y.S.2d 623, 569 N.E.2d 426:

> We have reexamined the relevant New York case law and we conclude that the Second Circuit [in DeWeerth] should not have imposed a duty of reasonable diligence on the owners of the stolen art work for purposes of the Statute of Limitations.[4]

Accordingly, in my view, this case is a most compelling one for relief under Fed. R.Civ.P. 60(b)(6) which provides in pertinent part as follows:

> On motion and upon such terms as are just, the court may relieve a party … from a final judgment … for … (6) any other reason justifying relief from the operation of the judgment.

Subpart (6) of the said Rule, as stated by our Court in *Matarese v. LeFevre*, 801 F.2d 98 (2d Cir.1986) at 106:

> "confers broad discretion on the trial court to grant relief when 'appropriate to accomplish justice,'" *International Controls Corp. v. Vesco*, 556 F.2d 665, 668 n. 2 (2d Cir.1977) (quoting *Klapprott v. United States*, 335 U.S. 601, 615, 69 S.Ct. 384, 390, 93 L.Ed. 266 (plurality opinion of Black, J.), *modified on other grounds*, 336 U.S.

942, 69 S.Ct. 384, 93 L.Ed. 266 (1949)), *cert. denied*, 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 758 (1978); it constitutes a "grand reservoir of equitable power to do justice in a particular case," *Radack v. Norwegian America Line Agency, Inc.*, 318 F.2d 538, 542 (2d Cir.1963) (quoting 7 *Moore's Federal Practice*, ¶ 60.27[2] at 60–295). It is "properly invoked where there are extraordinary circumstances, *Ackermann v. United States*, 340 U.S. 193, 199, 71 S.Ct. 209, 212, 95 L.Ed. 207 (1950); see *United States v. Cirami*, 563 F.2d [26, 32 (2d Cir.1977) ]; or where the judgment may work an extreme and undue hardship, see *United States v. Karahalias*, 205 F.2d 331, 333 (2d Cir.1953); *In re Emergency Beacon Corp.*, 666 F.2d 754, 759 (2d Cir.1981), and "should be liberally construed when substantial justice will thus be served." *Radack v. Norwegian America Line Agency, Inc.*, 318 F.2d at 542; see also *Dunlop v. Pan American World Airways, Inc.*, 672 F.2d 1044, 1051 (2d Cir.1982); *United States v. Cirami*, 563 F.2d at 32.

The clear applicability of Rule 60(b)(6) to this case was well-stated by Judge Broderick below, 804 F.Supp. at 547:

> The range of fundamental policy and constitutional considerations which have informed the *Erie* [5] doctrine are fully evident in the present case. Failure to act on the present Rule 60 motion would deny Mrs. DeWeerth the right to recover her property solely because she initially brought this action in federal rather than state court. Had Mrs. DeWeerth brought suit in state court, her claim would have been deemed timely commenced under the applicable statute of limitations.
>
> Such inconsistency is exactly the type of result that *Erie* was enacted to avoid. As Justice Frankfurter noted, "[t]he nub of the policy that underlies *Erie R. Co. v. Tompkins* is that for the same transaction the accident of a suit by a non-resident litigant in a federal court instead of in a State Court a block away should not lead to a substantially different result." *Guar-*

---

4. The majority here acknowledges that "… no earlier New York case had addressed this issue[.]"

5. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

*anty Trust Company of New York v. York,* 326 U.S. 99, 109, 65 S.Ct. 1464, 1470, 89 L.Ed. 2079 (1945).

I am, of course, unhesitatingly one with the majority as to the "integrity of the [prior] *DeWeerth* decision [and] ... the fairness of the process that was accorded DeWeerth." However, given the majority's acknowledgement "that the [prior] *DeWeerth* panel's prediction was wrong[,]" I cannot accept the result here that Mrs. DeWeerth, who sought our federal diversity jurisdiction, must now suffer the consequences not only of the said soon-corrected prediction, but also today's determination by the majority that for us to grant her Rule 60(b)(6) relief would have the Court embark on "simply an improvident course that would encourage countless attacks on federal judgments long since closed."[6] Little more than two and one-half years elapsed from the denial of certiorari in the first *DeWeerth* appeal, and *Guggenheim's* authoritative pronouncement.[7] Rule 60 exists as a remedy in an extraordinary case to accomplish justice, *see Matarese v. LeFevre, supra.* This I see as such a case. Should not the impact of *Guggenheim* rather be shouldered by us, notwithstanding the integrity of our error? While the doctrine of finality of judgments does address an important interest, it should not deter us from using Rule 60 today to do justice because we may have to deal hereafter with the Rule's invocation in unworthy cases.

Accordingly, contrary to the majority, I see no abuse of discretion by the District Court and would affirm on the scholarly and thorough opinion of Judge Broderick below.

---

**6.** The majority expressly reaches this view stating that the district court abused its discretion where it weighed "any injustice DeWeerth believes she has suffered by litigating her case in the federal as opposed to the state forum" more heavily than "the important interest in the finality of the judgment in this case[.]"

**7.** The majority acknowledges that under some circumstances the mere passage of some time would not bar appropriate correction.