**Raymond L. McGESHICK,
Plaintiff–Appellant,**

v.

**A.K. CHOUCAIR, M.D., Marshfield Clinic, and Wisconsin Patients Compensation Fund, Defendants–Appellees.**

**No. 92–3445.**

United States Court of Appeals,
Seventh Circuit.

Dec. 14, 1995.

Vincent R. Petrucelli, Joseph C. Sartorelli, Petrucelli & Petrucelli, Iron River, MI, for Raymond L. McGeshick.

Steven J. Caulum, David J. Pliner, Bell, Metzner, Gierhart & Moore, Madison, WI, for A. K. Choucair, Marshfield Clinic, and Wisconsin Patients Compensation Fund.

Richard T. O'Neill, Office of the Attorney General, Lansing, MI, for Frank J. Kelley, Attorney General for the State of Michigan, Intervenor, and Michigan Department of Social Services, Intervenor.

Before POSNER, Chief Judge, FLAUM and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

This case is before the court on the motion of Raymond L. McGeshick, the appellant, for a recall of this court's mandate and the grant of a petition for rehearing. For the reasons

set forth in the following opinion, we deny the motion to recall the mandate and dismiss the petition for rehearing as moot.

## BACKGROUND

The underlying appeal, a medical malpractice case within the diversity jurisdiction of the district court, was decided on the merits by this court on November 15, 1993. *See McGeshick v. Choucair*, 9 F.3d 1229 (7th Cir.1993). In that decision, we affirmed a jury verdict adverse to Mr. McGeshick and in favor of Dr. Choucair. Mr. McGeshick had claimed that Dr. Choucair was negligent in failing to advise Mr. McGeshick about the possible causes of his myelopathy (a disease of the spinal cord) and the possibility of angiography as a diagnostic measure to exclude one of several possible causes of his condition. Specifically, the district court refused, over objection of Mr. McGeshick's counsel, to give an instruction that placed a duty on Dr. Choucair to make such a disclosure and instead gave a general negligence instruction.

While the appeal was pending before us, the Wisconsin Court of Appeals issued a decision in *Martin v. Richards*, 176 Wis.2d 339, 500 N.W.2d 691 (Ct.App.1993). The day after oral argument in this appeal, this court on its own motion invited the parties' attention to the *Martin* decision and ordered supplemental briefing on how *Martin* might have changed the law of informed consent in Wisconsin. Both parties filed supplemental briefs. We considered these submissions. The Supreme Court of Wisconsin subsequently granted review of the *Martin* case. *Martin v. Richards*, 505 N.W.2d 137 (Wis. 1993). Yet by the Fall of 1993, it became apparent that there would be a significant delay in the issuance of a decision in *Martin* by the Supreme Court of Wisconsin. We therefore concluded that we could not estimate when the Supreme Court of Wisconsin would determine whether *Martin* was correctly decided and that our primary duty was to decide the case before us. Accordingly, our own consideration of the issue completed, we affirmed the judgment on review and declined to accept the holding of *Martin* because we did not believe that the holding in that case would be adopted by the Supreme Court of Wisconsin. *See McGeshick*, 9 F.3d at 1232–34.

On May 4, 1995, the Supreme Court of Wisconsin decided *Martin*. *See Martin v. Richards*, 192 Wis.2d 156, 531 N.W.2d 70 (1995). Contrary to our prediction, it affirmed the state appellate court. Mr. McGeshick now asks that we recall our mandate and further asks that we then reconsider our earlier decision in light of the holding of the Supreme Court of Wisconsin.

## DISCUSSION

It is well settled that, as a general proposition, courts possess inherent power to recall a mandate in exceptional circumstances. *Patterson v. Crabb*, 904 F.2d 1179, 1180 (7th Cir.1990). A supervening change in governing law that calls into serious question the correctness of the court's judgment may justify recall of the mandate. *United States v. Holland*, 1 F.3d 454, 456 (7th Cir. 1993) (Ripple, J., in chambers) (citing *Zipfel v. Halliburton Co.*, 861 F.2d 565 (9th Cir. 1988)). In any such case, the primary countervailing consideration is the importance of finality in judicial proceedings. When addressing the need for finality in different but parallel circumstances, the Supreme Court stated:

> Public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties.

*Baldwin v. Iowa State Traveling Men's Assoc.*, 283 U.S. 522, 525, 51 S.Ct. 517, 518, 75 L.Ed. 1244 (1931). As the Third Circuit recognized in *American Iron & Steel Institute v. EPA*, 560 F.2d 589, 592 (3d Cir.1977), this overarching judicial policy concern is salutary because of the need for party reliance in the finality of judgments and the need to conserve judicial resources for other litigation as yet unresolved.

In determining the appropriate balance between these countervailing factors of correcting a judicial course of action that has proven to have been improvidently chosen

and of preserving finality in judicial decision-making, courts have been guided by a variety of considerations. The Supreme Court has confronted the issue on two occasions. In *Gondeck v. Pan American World Airways*, 382 U.S. 25, 86 S.Ct. 153, 15 L.Ed.2d 21 (1965), the Court vacated its order denying certiorari and reversed the judgment under review when the plaintiff demonstrated that the Court of Appeals had erred in its interpretation of the applicable standard and that another Court of Appeals subsequently had applied the standard correctly in another case arising out of the same disaster. By contrast, in *Weed v. Bilbrey*, 400 U.S. 982, 91 S.Ct. 361, 27 L.Ed.2d 112 (1970), the Supreme Court declined to reopen an earlier disposition. After certiorari had been denied in *Weed*, the writ was granted in another case and the Court altered the law in a way that also would have benefitted the petitioner in *Weed*. Although the Court's action might possibly be explained by the unique nature of its discretionary certiorari review, it seems more probable that the Court decided to limit its abrogation of the finality doctrine to situations involving a common disaster. Professor Wright and his colleagues have aptly noted that these two cases hardly give us a complete picture of the Supreme Court's view on this issue:

> In civil litigation, the obvious present stopping point would be a requirement that relief is available only if different results have been reached in cases growing out of a single historic fact setting. There is no indication whether relief should be given in all such situations.... On the other hand, there is nothing in the opinions that prevents the extension of the power to grant relief. Claims arising out of indistinguishable but historically separate fact situations some day may seem to present equally strong demands for relief.

16 Charles A. Wright et al., *Federal Practice and Procedure* § 3938, at 287 (1977).

When we turn to the specific *Erie* [1] situation before us, we find more explicit guidance to assist us in striking the appropriate balance between the competing policy concerns. Our colleagues on the United States Court of Appeals for the Second Circuit have faced the problem we now face. *DeWeerth v. Baldinger*, 38 F.3d 1266 (2d Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 512, 130 L.Ed.2d 419 (1994), was a diversity suit by DeWeerth, the owner of allegedly stolen art, to recover the item from a good faith purchaser. The owner initially did not prevail in the Second Circuit. That court, interpreting New York law, had determined that New York statute of limitations law required a showing of reasonable diligence in locating stolen property and that, absent such a showing, the suit was barred. Several years later, the New York Court of Appeals, the highest court of the state of New York, held that no such showing was required. DeWeerth then sought relief under Rule 60(b)(5) and (6). The district court granted relief. On appeal, the Second Circuit reversed the district court. It held that it was inappropriate for the district court to have reopened the judgment. Writing for the court, Judge Walker pointed out that DeWeerth, by bringing the suit in federal court rather than in state court, knew that any open issue of state law would be decided by a federal as opposed to a state court. A contrary result in state court at a later date does not, he continued, impugn the integrity of the earlier federal decision or the fairness of the process afforded the litigants in the federal proceeding.

> The very nature of diversity jurisdiction leaves open the possibility that a state court will subsequently disagree with a federal court's interpretation of state law. However, this aspect of our dual justice system does not mean that all diversity judgments are subject to revision once a state court later addresses the litigated issues. Such a rule would be tantamount to holding that the doctrine of finality does not apply to diversity judgments, a theory that has no basis in *Erie* or its progeny.

*DeWeerth*, 38 F.3d at 1273–74. Judge Walker also noted that cases such as this one do not pose a direct clash between the need for finality in litigation and the policies embodied in the *Erie* doctrine. *Erie* requires that, at the time of decision, the federal court apply the law of the state in which it sits. It does

---

1. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

not require that later changes in that state law be treated as a ground for reopening that judgment. *Id.* at 1272–73. *Accord Batts v. Tow–Motor Forklift Co.*, 66 F.3d 743, 750 (5th Cir.1995) ("The general rule that a change in decisional law will not ordinarily warrant Rule 60(b)(6) relief has greater force in an *Erie* case because in this context a federal court is doing no more than fulfilling its obligation scrupulously to determine how a state court would decide a question."); *see also Dowell v. State Farm Fire & Casualty Auto. Ins. Co.*, 993 F.2d 46, 48 (4th Cir.1993) ("[A] decisional change in the law subsequent to the issuance of a final judgment, especially ... where the earlier judgment is neither res judicata nor provides collateral estoppel, does not provide a sufficient basis for vacating the judgment under Rule 60(b)(5).").[2]

In this regard, we think that the approach of the Second, Fourth and Fifth Circuits is quite compatible with that taken by our colleagues in the Tenth Circuit in *Pierce v. Cook & Co.*, 518 F.2d 720 (10th Cir.1975), *cert. denied*, 423 U.S. 1079, 96 S.Ct. 866, 47 L.Ed.2d 89 (1976). In that case, there was parallel litigation in the federal and state courts arising out of the same occurrence. The federal court, after determining that federal law did not preempt state law, held that, under Oklahoma law, a shipper was not liable for the torts of an independent contractor. The state court later held, however, that the shipper had to exercise reasonable care in the selection of a competent carrier. In granting the federal litigants post-judgment relief, the Tenth Circuit narrowly circumscribed its holding to take care of the "unusual combination of events" that made "the situation extraordinary." *Id.* 518 F.2d at 723. The court was of the view that in "diversity cases the results in federal court should be substantially the same as those in state court litigation *arising out of the same transaction or occurrence.*" *Id.* (emphasis added). Mirroring the holdings in the Supreme Court cases discussed above, the court distinguished its own earlier precedent in which the decisional change had come in unrelated litigation. *See Collins v. City of Wichita, Kansas*, 254 F.2d 837, 839 (10th Cir.1958). The Tenth Circuit also noted that, in *Pierce*, the federal litigants had been forced to litigate in federal court because of the removal statute. They therefore had not assumed voluntarily the risk described by the Second Circuit in *DeWeerth.*[3]

In this matter, the alteration, or clarification, in the law of Wisconsin occurred in a case entirely unrelated to the case before us. Nor are we faced with a situation in which the plaintiff was forced to litigate in federal court because of the operation of the removal statute. We also note that this action is one for damages between private litigants and does not implicate special public interest concerns that might be present in governmental litigation in which the court's previous action requires action by the parties of a continuing nature and in which recall of the mandate would not be "especially disruptive of the interests in finality of judgments." *American Iron & Steel Inst. v. EPA*, 560 F.2d 589, 599 (3d Cir.1977). "When confronted with an unsettled issue of state law, a federal court sitting in diversity must make its best effort to predict how the state courts would decide the issue." *DeWeerth*, 38 F.3d at 1273. This court fulfilled that obligation. Consistent with the decisions of the other circuits, we believe that a legitimate concern for finality requires that we not disturb that judgment.

---

**2.** In *Brenna v. Federal Cartridge Corp.*, 183 F.2d 414 (8th Cir.1950), the Court of Appeals for the Eighth Circuit granted a petition for rehearing in a Fair Labor Standards Act case after the Supreme Court, in unrelated litigation, overruled the Eighth Circuit case upon which it had relied. Although the short per curiam opinion gives no details of the circumstances, an examination of the dates of the various opinions leaves open the possibility that the earlier judgment had become final at the time the court granted the petition for rehearing. If such an assumption is correct, we believe that the approach of the cases discussed in the text is the preferable one. We note that the Court of Appeals for the Second Circuit has also declined to follow *Brenna*. *See Marino v. Ortiz*, 888 F.2d 12, 13–14 (2d Cir.1989), *cert. denied*, 495 U.S. 931, 110 S.Ct. 2172, 109 L.Ed.2d 501 (1990).

**3.** In *Dowell*, the court noted that the case had been removed from state court, but did not appear to consider that fact of significant consequence. However, it did rely on another element of plaintiff choice. It noted that the plaintiff had not chosen to appeal the earlier adverse determination of state law. *Dowell*, 993 F.2d at 48.

MOTION FOR RECALL OF MANDATE DENIED.

PETITION FOR REHEARING DISMISSED AS MOOT.